2527

The STATE, Respondent v. Robert Lee DRIGGERS, Appellant.

(473 S.E. (2d) 57)

Court of Appeals

*Assistant Appellate Defender Lesley M. Coggiola,* of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,* and *Senior Assistant Attorney General Norman Mark Rapoport,* Columbia; and *Solicitor David Price Schwacke,* North Charleston, *for respondent.*

Heard June 5, 1996.

Decided July 1, 1996.

GOOLSBY, Judge:

Robert Lee Driggers appeals his conviction for armed robbery, claiming the trial court erred in admitting evidence seized in the execution of a search warrant issued without probable cause. We affirm.

## FACTS

On July 1, 1994, two men dressed in camouflage and wearing black cloth masks robbed Pappy's Restaurant near Goose Creek, South Carolina. One of the men had a handgun. The other man demanded the cashier place into a Food Lion grocery bag all the money in the drawer under the cash register. The men escaped with approximately $2500 in cash.

Ten days after the robbery, Detective Chester Howell of the Berkeley County Sheriff's office received information from an informant that caused him to contact Andreas Klepp-Egge. Detective Howell had neither met Klepp-Egge nor obtained information from him before this interview.

On the evening of July 11, 1994. Klepp-Egge gave Detective Howell a detailed written statement in which he set forth the following information:

> 1) On June 29, 1994, Klepp-Egge moved into apartment F-1 of the Summer Creek Apartments with Ricky Meadows, Danny Haverson and his girlfriend, and Driggers and his family.

2) On the night of the robbery, July 1, 1994, Klepp-Egge saw Driggers and his wife in the apartment repairing a gun and cutting out eye holes in black material. While trying to go to sleep on the living room floor, he saw Driggers and Meadows leave the apartment around midnight.

3) Early the next morning, Meadows and Driggers returned wearing wet clothes and carrying a large amount of money. Meadows and Driggers counted the money, a total of $2400, and talked about having robbed Pappy's Restaurant in Goose Creek and getting the money from a box under the cash register. They said they "ditched the gun and [their] outer clothes in the woods behind Pappy's."

4) Later that morning, Meadows gave Klepp-Egge $100 and told him to get a room at the Terrace Inn for three days for all of them. Klepp-Egge stayed in Room 307 for one night with Meadows while Driggers stayed in Room 303.

5) Klepp-Egge believed Driggers still to be living out of Room 303 at the time of the statement.

Detective Howell submitted Klepp-Egge's original statement and his own affidavit to a magistrate that same day. The affidavit stated in part:

That on 7-11-94 the affiant received a *written statement* from A. Klepp-Egge who stated he saw the weapon in the possession of Robert Driggers prior to the robbery and witnessed the defendant Driggers and a co-defendant count the money from the robbery which they stated was from Pappy's Restaurant and the sum was $2400.

(Emphasis added.) The magistrate then issued a search warrant for Room 303 of the Terrace Inn, the premises described elsewhere in the affidavit.

Law enforcement officers immediately went to execute the search warrant. They arrested Driggers outside Room 303 and then executed the search warrant. The officers recovered two black shirts, a pair of camouflage pants, a black jacket with a hood, two plastic Food Lion bags, and a black-handled knife.

At his trial, Driggers moved to suppress the evidence obtained as a result of the search warrant. He argued the war-

rant was not supported by probable cause because the magistrate was not presented with sufficient evidence of the informant's reliability. We disagree.

## DISCUSSION

Since the United State Supreme Court adopted a "totality of the circumstances" test in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed (2d) 527 (1983), the task of a magistrate when determining whether to issue a warrant is simply to make a practical, common sense decision as to whether, under the totality of the circumstances set forth in the affidavit, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that evidence of a crime will be found in a particular place. *State v. Johnson*, 302 S.C. 243, 247, 395, S.C. (2d) 167, 169 (1990). The magistrate should determine probable cause based on all of the information available to the magistrate at the time the warrant was issued. *State v. Bultron*, — S.C. —, 457 S.E. (2d) 616 (Ct. App. 1995). Upon review, an appellate court's task is to decide whether the magistrate had substantial basis for concluding probable cause existed. *State v. Arnold*, — S.C. —, 460 S.E. (2d) 403 (Ct. App. 1995). A reviewing court should give great deference to a magistrate's determination of probable cause. *State v. Sullivan*, 267 S.C. 610, 230 S.E. (2d) 621 (1976).

Driggers argues that the search warrant was defective because Officer Howell's affidavit neither mentions the police had any previous contacts with Klepp-Egge nor otherwise comments on Klepp-Egge's reliability. Although Howell's affidavit does not contain any references to prior experiences with Klepp-Egge, there are, nonetheless, sufficient other indicators of the reliability of his statements. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. (2d) 527 (1983) (a deficiency in veracity may be compensated for by a strong showing of basis of knowledge or by some other indicia of reliability).

First, evidence of past reliability is not usually required when information is provided by an eyewitness because, unlike the paid informer, the eyewitness does not ordinarily have the opportunity to establish a record of previous reliability. *State v. Northness*, 20 Wash. App. 551, 582

P. (2d) 546 (1978); *see also Saunders v. Commonwealth,* 218
Va. 294, 237 S.E. (2d) 150 (1977) (a magistrate may infer the
reliability of a search warrant affidavit, which discloses infor-
mation from an eyewitness to the fact related, because the af-
fidavit is based on firsthand knowledge); *Sullivan,* 267 S.C.
610, 230 S.E. (2d) 621 (acknowledging courts have distin-
guished between affidavits relying on eyewitness or victim in-
formers and those relying on paid informers in that the for-
mer may be sufficient to establish probable cause even if the
affidavits do not independently establish the credibility of the
informant when other circumstances show the information is
likely to be reliable).

Klepp-Egge's written statement clearly indicates that
he directly observed some of the preparation for the
robbery.[1] He was also an eyewitness to the events fol-
lowing the robbery, including seeing Driggers count the
money and then go to the Terrace Inn later that morning.
Klepp-Egge's detailed statement regarding his firsthand ob-
servations provides him with "built in credibility." *See North-
ness,* 582 P. (2d) at 549.

Second, a nonconfidential informant should be given a
higher level of credibility because he exposes himself
to public view and to possible criminal and civil liability
should the information he supplied prove to be false. *State v.
Daley,* 189 Conn. 717, 458 A. (2d) 1147 (1983). In *Daley,* the in-
formant was the roommate of one of the men involved in the
robbery. The police obtained a search warrant based on his
statement that he saw the men put cash, handbags, and jew-
elry on the kitchen table in his apartment. The men did not

---

[1] Although Driggers claims Klepp-Egge's written statement could not be
used to supplement the affidavit because it was unsworn, we hold Officer
Howell's sworn affidavit incorporated the written statement when the affi-
davit directly and expressly referred to it. *See Sullivan,* 267 S.C. 610, 230 S.E.
(2d) 621 (affidavits in support of search warrants should be viewed in acom-
mon sense and realistic fashion since they are not meticulously drawn by
lawyers). Thus, the magistrate justifiably used the information in making his
determination because Howell gave the written statement to the magistrate
along with his affidavit. *See Bultron,* — S.C. —, 457 S.E. (2d) 616 (in deter-
mining probable cause, the magistrate should use all of the information avail-
able to him at the time the warrant was issued); *see also Sullivan,* 267 S.C.
610, 230 S.E. (2d) 621 (it is a longstanding rule that an affidavit in support of a
search warrant can show probable cause even when based on an informant's
hearsay statements).

tell the roommate where they obtained the items. The Supreme Court of Connecticut found the trial court had incorrectly suppressed the evidence obtained through the search warrant. The court found two reasonable inferences to support the informant's reliability: 1) the roommate was an eyewitness who wanted to inform the police of the evidence he saw in order to avoid being associated with the crime; or 2) the roommate was a participant who was seeking to avoid suspicion by coming forward with the information before the police discovered his involvement. Either way, it was reasonable to infer that the information might be used against him. *Id.*, 458 A. (2d) at 1150-51.

Like the roommate's statement in *Daley*, Klepp-Egge's statement was a reliable indicator that probable cause existed to issue the search warrant. Klepp-Egge did not keep his name confidential but instead signed a written statement that Officer Howell subsequently gave to the magistrate. Howell also specifically stated in his affidavit that he received the written statement from Klepp-Egge. Klepp-Egge therefore exposed himself to public view and to possible liability if he gave the wrong information or if he was later accused of some involvement in the crime since he was at the apartment before and after the robbery and helped rent the hotel room in question.

No matter how one views Klepp-Egge's relationship with the other men, the magistrate could certainly make a common sense determination that his information was reliable. In fact, Klepp-Egge was privy to more information than the informant in *Daley*. In this case, Driggers and Meadows told Klepp-Egge that they had robbed Pappy's Restaurant while the informant in *Daley* was not privy to the actual source of evidence. *See also United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed. (2d) 723 (1971) (people do not lightly provide the police with critical evidence that might lead to their own prosecutions).

Third, an informant is reliable if he possessed a special ■ relationship and capacity to gain knowledge that should prompt belief in the veracity of his information. *Northness*, 582 P. (2d) 546. In *Northness*, the named informant made a statement to the police after she found drugs hidden in her apartment and later saw her roommate's boyfriend smok-

ing marijuana in another apartment. The informant's statement led to the issuance of a search warrant for both apartments. The Washington Court of Appeals affirmed the trial court's finding that the informant's special relationship and personal observation as one of the roommates, coupled with her willingness to provide her name to the magistrate, attested to the informant's reliability without independent corroboration. *Id.*, 582 P. (2d) at 550.

Similarly, Klepp-Egge was living at Drigger's apartment during the time surrounding the robbery and thus had the ability to observe Driggers's actions and statements firsthand. As a result, Klepp-Egge was able to include in his written statement certain details Driggers and Meadows told him about the robbery. The magistrate could infer Driggers had openly discussed the robbery because he thought he could trust everyone living in the apartment. *See also State v. Owen*, 275 S.C. 586, 274 S. E. (2d) 510 (1981) (a named informant, who was the son of the driver of a truck filled with marijuana, was reliable because he had open access to the information due to his special relationship with one of the parties involved in the crime).

Furthermore, the magistrate issued the second search warrant in *Northness* based on the informant's single statement that she saw her roommate's boyfriend smoking marijuana in another apartment. *Northness*, 582 P. (2d) at 547. Here, the magistrate was also justified in relying on Klepp-Egge's statement that Driggers was probably still at the Terrance Inn since Klepp-Egge had last seen him in room 303. It was reasonable for the magistrate to assume Driggers and Meadows had a special relationship and trusted Klepp-Egge since they gave him one hundred dollars to rent the hotel rooms for them all.

Fourth, the specificity of the informant's information coupled with the absence of ulterior motives has been held sufficient to constitute reliability. *Sullivan*, 267 S.C. 610, 230 S.E. (2d) 621. In *Sullivan*, the apartment manager provided the police with specific details about the presence of drugs and drug paraphernalia in an apartment under her supervision. The informant's statement was credible because she provided specific details and was not a paid informer. In fact, the court noted it was against the manager's best business interests to

report her findings because she would lose her tenants.

Likewise, Klepp-Egge gave the police very specific details about evidence from the crime. Before the robbery, he saw Driggers and his wife rubbing the gun with mascara and oil to make it look new and he saw them making masks. After the robbery, he observed the wet clothes of both Driggers and Meadows and saw them count $2400 in cash. Klepp-Egge was able to relay to the police the details the men had told him about robbing Pappy's Restaurant. Klepp-Egge knew the name of the hotel and the exact room where Driggers stayed after he left his apartment. Klepp-Egge also acted against his best interests by providing the police with information that possibly linked him to the crime. His specific details combined with his lack of ulterior motive provide Klepp-Egge with credibility without the need for additional corroborating evidence.

We therefore hold Klepp-Egge's statement, when viewed in a common sense and realistic fashion, provided a substantial basis for the magistrate's finding of probable cause and for the magistrate's issuance of the search warrant.

Affirmed.[2]

CURETON and STILWELL, JJ., concur.

---

[2] Because we affirm on this ground, we do not address the State's remaining arguments.