561 S.E.2d 640

The STATE, Respondent,

v.

Anthony KING, Appellant.

No. 3467.

Court of Appeals of South Carolina.

Heard March 5, 2002.

Decided March 25, 2002.

144

Assistant Appellate Defender Katherine Carruth Link, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, and Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

ANDERSON, Judge:

Anthony King appeals his conviction for possession with intent to distribute crack cocaine, asserting the trial court erred in its rulings regarding: (1) the validity of a search warrant; (2) evidence of prior drug activity and incarceration; and (3) the solicitor's closing argument. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On May 25, 1999, King was arrested at a trailer in rural Beaufort County pursuant to a bench warrant in a matter unrelated to this appeal. The arresting officer was John Gobel, a narcotics investigator with the Beaufort County Sheriff's Department and a member of the Drug Enforcement Agency Task Force. According to Officer Gobel, King said he resided at the trailer. The trailer was owned by Frank Harris.

While in jail, King telephoned his mother, who in turn set up a three-way call to Eugenia Kirken. King and Kirken were friends and had known each other for approximately a year. King was unable to reach Kirken; however, he left her a recorded message that purportedly directed her to go to the trailer where he was staying and get his "shit" out. He eventually spoke to her several times expressing the same concern using this terminology.

Kirken interpreted King's statements as a directive to remove crack cocaine belonging to King from the trailer. According to Kirken, King often referred to drugs by the pejorative "shit." During the year they had known each other, Kirken had purchased crack cocaine from King at least twenty times. In addition, Kirken witnessed King selling the drug to others on at least forty occasions. Much of this activity occurred at the trailer referenced by King in his telephone message.

Instead of following King's directive, Kirken contacted Corporal Michael Riley of the Beaufort County Sheriff's Department. Kirken met with Corporal Riley and his supervisor, Staff Sergeant David Rice, and told them of King's message and her knowledge of what King meant.

Though Kirken was once addicted to crack and had a felony record, Corporal Riley and Sergeant Rice considered Kirken's information credible because she was a confidential informant for the Beaufort County Drug Task Force and had provided accurate information in several past investigations. Based on Kirken's information, Corporal Riley and Sergeant Rice obtained a warrant to search the trailer. During their search, deputies discovered 2.7 grams of crack cocaine in the bedroom

reportedly used by King. The police found King's South Carolina identification card in the same room.

King was indicted for possession with intent to distribute crack cocaine. He was convicted as charged and sentenced to ten years in prison. This appeal followed.

## STANDARD OF REVIEW

An appellate court reviewing the decision to issue a search warrant should "decide whether the magistrate had a substantial basis for concluding probable cause existed." *State v. Arnold,* 319 S.C. 256, 260, 460 S.E.2d 403, 405 (Ct.App.1995) (citation omitted). This review, like the determination by the magistrate, is governed by the "totality of the circumstances" test. *State v. Jones,* 342 S.C. 121, 536 S.E.2d 675 (2000). The appellate court should give great deference to a magistrate's determination of probable cause. *Id.; see also State v. Weston,* 329 S.C. 287, 494 S.E.2d 801 (1997).

## LAW/ANALYSIS

### I. Validity of Search Warrant

King first contends the trial court erred in admitting evidence seized pursuant to the search warrant because the warrant was based on information from an unreliable informant and was not supported by probable cause. We disagree.

Defense counsel moved *in limine* to suppress the crack cocaine seized pursuant to the search warrant because the warrant was not supported by probable cause. Counsel argued Kirken was "clearly unreliable" as a confidential informant because she was a convicted felon and crack addict and admitted using cocaine during the time she was working for the Sheriff's Department. Counsel contended this information was not provided to the magistrate and that Kirken gave the Sheriff's Department only general information about where the crack could be found. The trial court denied the motion to suppress the drug evidence, finding the probable cause requirements were met. On appeal, King asserts the trial court erred in admitting the drug evidence because the search warrant was not supported by probable cause.

Initially, we question whether this issue is preserved for our review. Although defense counsel made an *in limine* motion to suppress the introduction of the crack cocaine, counsel did not renew his objection at trial when the crack cocaine was actually entered into evidence. In fact, when the solicitor moved for admission of the drug evidence, defense counsel affirmatively stated, "Without objection." The trial court then admitted the drugs into evidence, noting, "Without objection received into evidence."

Since no objection was renewed at the time the evidence was offered, the matter is not preserved for appeal. *See State v. Forrester*, 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001) ("In most cases, '[m]aking a motion *in limine* to exclude evidence at the beginning of trial does not preserve an issue for review because a motion *in limine* is not a final determination. The moving party, therefore, must make a contemporaneous objection when the evidence is introduced.' ") (citation omitted); *see also State v. Mitchell*, 330 S.C. 189, 193 n. 3, 498 S.E.2d 642, 644 n. 3 (1998) ("We have consistently held a ruling in limine is not final, and unless an objection is made at the time the evidence is offered and a final ruling procured, the issue is not preserved for review.") (citation omitted); *State v. Floyd*, 295 S.C. 518, 521, 369 S.E.2d 842, 843 (1988) (***"We caution Bench and Bar that these pretrial motions are granted to prevent prejudicial matter from being revealed to the jury, but do not constitute final rulings on the admissibility of evidence."*** ) (emphasis added); *State v. Gagum*, 328 S.C. 560, 564–65, 492 S.E.2d 822, 824 (Ct.App.1997) ("Because a ruling in an *in limine* motion is not final, the losing party must renew his objection at trial when the evidence is presented in order to preserve the issue for appeal.") (citations omitted); *cf. State v. Burton*, 326 S.C. 605, 486 S.E.2d 762 (Ct.App. 1997) (***noting the general rule that a court's ruling on in limine motion is not a final decision, but applying State v. Mueller and holding where objection is made during trial and there are no intervening witnesses before the disputed testimony, the decision is final and the objection need not be renewed*** ); *State v. Mueller*, 319 S.C. 266, 460 S.E.2d 409 (Ct.App.1995) (holding objection to use of prior convictions for impeachment purposes was preserved where motion was made during trial, rather than during an *in limine* proceeding, and

no evidence was received between the ruling and the disputed testimony).

In *Forrester,* our Supreme Court noted a defendant's *in limine* motion to suppress evidence should be renewed at trial to preserve the issue for review, but found the defendant's objection to admission of crack cocaine evidence was preserved in that particular case based on *Mueller* because the trial court's ruling was obtained ***immediately*** prior to the admission of the drug evidence. *Id.* at 642–43, 541 S.E.2d at 840 (emphasis added). These circumstances are not present in King's case. Thus, King was required to renew his *in limine* motion.

Adverting to the merits, we find no error in the trial court's admission of the drug evidence and its determination regarding the validity of the search warrant.

█ A magistrate may issue a search warrant only upon a finding of probable cause. *State v. Weston,* 329 S.C. 287, 494 S.E.2d 801 (1997); *see also* S.C.Code Ann. § 17–13–140 (1985) (providing search warrants may be issued "only upon affidavit sworn to before the magistrate ... establishing the grounds for the warrant.").

█ This determination requires the magistrate to make a practical, common-sense decision of whether, given the totality of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Bellamy,* 336 S.C. 140, 519 S.E.2d 347 (1999); *State v. Philpot,* 317 S.C. 458, 454 S.E.2d 905 (Ct.App.1995); *State v. Adolphe,* 314 S.C. 89, 441 S.E.2d 832 (Ct.App.1994).

Sergeant Rice completed a form affidavit in support of the search warrant. In response to the question asking the affiant to state the reason for the belief that the property sought was on the subject premises, Sergeant Rice answered as follows:

> In that on 5–26–99 BCSO DTF officers received information from a BCSO C.I., who has proven reliable on at least 1 occasion in the past. The C.I. was contacted by Anthony

"Jazz" King, a resident of the premises described above. King is currently incarcerated in the Beaufort County Detention Center. King advised the C.I. that he did not want BCSO to get his "shit" and to make arrangements to get the items out of the residence. King is known to the C.I. and to DTF officers as being active in illicit narcotics activity. The C.I. confirmed to DTF officers that King's referral to "shit" meant narcotics, probably cocaine[,] and that the C.I. has seen King in possession of ounce quantities of cocaine in the past.

In *State v. Williams*, 297 S.C. 404, 377 S.E.2d 308 (1989), the affidavit contained the following information: the investigating officer stated he had been told by an informant that the defendant's home contained illegal drugs; the informant had seen the drugs in the defendant's home within seventy-two hours of the swearing of the affidavit; and the informant had provided the sheriff's department with truthful information in the past, which led to convictions. Upon review, our Supreme Court held: "[T]he totality of the circumstances here provided the issuing magistrate a substantial basis upon which to make the probable cause determination." *Id.* at 406, 377 S.E.2d at 309.

In King's case, although Kirken had been in trouble with the law in the past, she had proven herself reliable to the Beaufort County authorities during prior investigations. Further, she personally had engaged in or witnessed many drug transactions involving King at the trailer within the year leading up to the Drug Task Force's search. We conclude the search warrant is valid under the totality of the circumstances and the drug evidence was properly admitted.

## II. References to Prior Drug Activity and Incarceration

### A. *Lyle* Analysis

King next contends the trial court erred in allowing testimony concerning his prior drug activity and incarceration and in allowing Kirken to testify as to her interpretation of his alleged message based on this prior drug activity. We disagree.

During pretrial proceedings, King moved to suppress testimony from Kirken about her drug transactions with King, as

well as her observations of King's drug sales to others. The following exchange occurred:

> Defense Counsel: I have some motions to suppress statements that would violate the law of this Court, *State v. Lyle* [.] I would ask that no statements from Beaufort County Sheriff's Office or other witnesses be made referencing my client as a drug dealer or a suspected drug dealer. This type of evidence is impermissible and improper.

> The Court: Okay.

> The Solicitor: Your Honor, in this situation what we have is we have the defendant calling the confidential informant in this case and telling her—excuse my language, this is the language that was used—"You need to get my shit."

> All right. The surrounding facts upon that is going to be the determination what he meant and also the fact that we have the issue here of possession with intent to distribute.

> . . . .

> She can provide firsthand knowledge of her activities with the defendant, his drug dealings, in order to provide the framework so that she can state that she knew what he meant.

Ultimately, the court determined Kirken could testify concerning King and his drug-related activities. The parameters of her testimony were closely defined by the court:

> The Court: Well, I think she can testify about her relationship with him, whatever it was, including whether she's bought drugs before. The jury, I'm talking about.

> The Solicitor: Right.

> The Court: And the conversation that she had with him, and that's it. I don't think she can talk about anything else, but that's all the State's asking for, isn't it?

> The Solicitor: That's correct, Your Honor. Just the information, the relationship, the information that he conveyed to her, and then for her to tell us the information that she conveyed to the Drug Task Force.

Evidence of a defendant's crimes, wrongs, or acts is generally not admissible. Rule 404(b), SCRE. Our courts view a defendant's previous distribution of drugs as a past bad act.

*See, e.g., State v. Bostick,* 307 S.C. 226, 414 S.E.2d 175 (Ct.App.1992) (determining the testimony of a police officer concerning the defendant's past drug distribution activities constituted evidence of prior bad acts).

In *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923), and incorporated in Rule 404(b), SCRE, a defendant's prior bad acts may be admitted to show: (1) motive; (2) identity; (3) the existence of a common scheme or plan; (4) the absence of mistake or accident; or (5) intent.

█ To admit prior bad acts regarding drugs under the *Lyle* exception, there must be a logical relevance between the acts in question and the purpose for introduction. *See State v. King,* 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999) ("The record must support a logical relevance between the prior bad act and the crime for which the defendant is accused."). "Under Rule 401, SCRE, evidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy." *State v. Cheeseboro,* 346 S.C. 526, 548, 552 S.E.2d 300, 311 (2001), *cert. pending; see also State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct.App. 2001).

Additionally, evidence of drug use or distribution must be clear and convincing. *State v. Dickerson,* 341 S.C. 391, 399, 535 S.E.2d 119, 123 (2000) ("The evidence of the prior bad acts must be clear and convincing to be admissible.") (citation omitted). Concomitantly, pursuant to Rule 403, SCRE, the prejudice resulting from the admission of this evidence must be outweighed by its probative value.

█ The State contended Kirken's testimony concerning her purchases of drugs from King and her observations of King's other drug transactions was admissible to show King's intent to distribute the crack cocaine found during the search. Testimony relating to a defendant's past drug distribution activities is admissible to establish the element of intent. *State v. Gore,* 299 S.C. 368, 384 S.E.2d 750 (1989).

In *Gore,* the defendant was convicted of possession of cocaine with intent to distribute and conspiracy to distribute cocaine. The Circuit Court permitted the State to enter evidence showing the defendant had sold cocaine from his

trailer on previous occasions to establish the defendant's intent regarding the cocaine the police seized. On appeal, our Supreme Court ruled the trial court's admission of this evidence was proper. Similarly, in the current appeal, proof of intent was integral to the State's case against King.

Relying upon *State v. Wilson*, 337 S.C. 629, 524 S.E.2d 411 (Ct.App.1999), King argues that evidence of his past drug sales did not meet the "clear and convincing" standard because the evidence was based upon "the uncorroborated testimony of a person who 'unquestionably has a stake in the outcome' by virtue of her own involvement in illegal drug activity and her pending prosecution for possession of crack." App. Brief at 8 (quoting *Wilson*, 337 S.C. at 632, 524 S.E.2d at 413). In other words, King asserts the trial court should not have admitted evidence regarding his past drug transactions because Kirken lacked credibility.

In *Wilson*, police officers executed a search warrant on a motel room occupied by the defendant and his girlfriend. Officers found a South Carolina identification card belonging to the defendant, a beeper, razor blades, and .78 grams of crack cocaine. They also found more than $700 in currency, a beer can fashioned into a pipe, and four small cellophane bags. Both the defendant and his girlfriend were arrested and charged with possession of crack cocaine with intent to distribute. The girlfriend pleaded guilty to possession of crack cocaine in return for her testimony against the defendant.

During trial, the defendant objected to the girlfriend's testimony concerning an alleged drug transaction involving the defendant that she claimed to have witnessed in the hallway of the motel two days before the arrest. At the *in camera* hearing that followed, the girlfriend testified she saw the defendant hand a woman a plastic bag containing what appeared to be a white rock in exchange for twenty dollars. The girlfriend characterized the substance as "drugs," but during cross-examination explained that her basis for this assumption was that she recognized the person who took it as someone "who usually smoke[s]." The defendant objected to the testimony on the ground that it was not "clear and convincing" and more prejudicial than probative. The trial court rejected the argument and admitted the evidence.

On appeal, this Court reversed and remanded the conviction, finding the girlfriend's testimony did not provide "clear and convincing" evidence of the defendant's past crimes because the girlfriend lacked credibility: "We ... note that [the girlfriend] unquestionably had a stake in the outcome by virtue of her involvement in the crime. To the extent she could place the blame for possession of the drugs upon [the defendant], she obviously benefitted in her plea negotiation and in lessening her degree of culpability for sentencing purposes." *Id.* at 632, 524 S.E.2d at 413.

This holding, however, was reversed by our Supreme Court in *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001). The Supreme Court found it was error for this Court to have considered the girlfriend's credibility when considering the admission of *Lyle* testimony. *Id.* at 6–7, 545 S.E.2d at 829. The credibility of a witness, the Court stated, is an issue solely reserved for the jury. *Id.* at 7, 545 S.E.2d at 830.

The *Wilson* Court defined the proper scope of review of a trial court's ruling on the admissibility of other bad acts: *"If there is any evidence to support the admission of the bad act evidence, the trial judge's ruling will not be disturbed on appeal."* *Id.* at 6, 545 S.E.2d at 829 (emphasis added) (footnote omitted). Applying this standard, we uphold the trial court's admission of Kirken's testimony. Kirken averred at trial that she bought crack cocaine from King at least twenty times and saw King engage in forty additional drug transactions with other persons. These experiences factually support the admission of Kirken's testimony as evidence of King's prior drug transactions.

## B. Rule 403, SCRE

King attacks the admission of Kirken's testimony by asserting the trial court did not perform the necessary Rule 403, SCRE analysis concerning the probative value of his prior bad acts. King's argument is facially valid in light of the mandate that the trial judge conduct an "on-the-record" analysis in matters pertaining to the admission of prior bad acts. *See State v. Beck,* 342 S.C. 129, 136, 536 S.E.2d 679, 683 (2000) ("After conducting a *Lyle* analysis and finding evidence both relevant and admissible as a prior bad act, the trial court must

conduct a Rule 403, SCRE analysis to determine whether or not the evidence is unduly prejudicial.").

■ The trial record does not reflect a comprehensive Rule 403 consideration by the trial court. Though an on-the-record Rule 403 analysis is required, this Court will not reverse the conviction if the trial judge's comments concerning the matter indicate he was cognizant of the evidentiary rule when admitting the evidence of King's prior bad acts. *Cf. State v. Dunlap*, 346 S.C. 312, 550 S.E.2d 889 (Ct.App.2001), *cert. granted* (**holding that, although the trial judge must perform a comprehensive, on-the-record Rule 609 analysis before admitting evidence of a defendant's prior convictions for purposes of impeachment, his failure to do so does not constitute error if the record reveals the judge was—at a minimum—aware of Rule 609's requirements**).

During his direct examination of Kirken, the solicitor sought to elicit testimony regarding Kirken's experiences with King:

The Solicitor: Okay. Did the defendant ever sell crack at that house [the trailer]?

Kirken: Yes, sir.

The Solicitor: Did he ever sell crack out of that room?

Kirken: Yes, sir.

The Solicitor: Have you ever seen crack in that room [in which the crack in this case was seized]?

Kirken: Yes, sir.

The Solicitor: All right.

Defense Counsel: Your Honor, I'm going to object, I would like to be heard on the record about those two last questions that the solicitor asked this witness. Thank you.

. . . .

(Jury excused.)

Defense Counsel: Your Honor, for the record at this time I'm going to renew my objection in reference to this witness's testimony specifically about buying drugs from my client 20 times and him selling drugs 40 times.

The last two questions that the solicitor asked were specific instances of conduct that he questioned her about,

not a general relationship that she had with him regarding any drug activity that he had.

The solicitor asked her specifically, you know, did you ever see him sell drugs out of that room, did he ever—did you ever see this activity take place. It's a specific question about a specific activity at a specific time. And I renew my objection.

The Court: Well, to my mind logically, and correct me if I'm wrong if you got some authority, but that goes to the sense he's charged with possession with intent to distribute drugs found right there, it's establishing his nexus or contact with that and she's been there, seen that and all that. To my mind, it's fair.[1]

While the trial court's ruling is a compressed Rule 403/404(b) analysis, it is some indicia of his consideration of whether admission of the testimony was fair to King (*i.e.,* more probative than prejudicial). We find no error in the trial court's ruling. Evidence of King's past drug-related activities was integral to proving his intent to distribute the crack cocaine seized from the trailer.

## C. Incarceration

■■ Finally, to the extent King claims the trial court improperly allowed testimony from the State that referenced his incarceration when he called Kirken, we find King did not brief this issue with any specificity. Instead, he simply stated: "The portions of the tape that alluded to appellant's incarceration on another matter were … improper, as that information had no bearing on any issue in the case and was inherently prejudicial. The court erred in allowing those excerpts to be played." This argument is conclusory and contains no citation support other than a reference to Rule 403. Accordingly, this issue is deemed abandoned. *See State v. Colf,* 332 S.C. 313, 504 S.E.2d 360 (Ct.App.1998) (deeming abandoned a conclusory, two-paragraph argument that cited no authority other than an evidentiary rule).

---

1. To the extent King challenges this particular testimony as to prior bad acts of selling drugs to Kirken twenty times and to others forty times, no objection was made contemporaneously with this testimony so as to preserve the issue for review. King's belated objection to subsequent testimony came too late.

### III. Solicitor's Closing Argument

King lastly contends the trial court erred in allowing improper comments by the solicitor concerning his failure to testify. We disagree.

During his closing argument, the solicitor stated:

> When you look at the facts in this case, look at Eugenia Kirken. You're dealing with an individual who has come to this court, admitted having a crack problem, admitted that she has committed crimes in the past. What she's also come to the court and stated was that through this experience[,] she has known the defendant, that the defendant has sold her crack cocaine, that the defendant has sold her crack cocaine on approximately 20 times and has witnessed him sell it on 40 other occasions.
>
> The other thing that you're faced with her is the fact that [Kirken] receives the call from the defendant. She has explained to you that the defendant has explained to her that he wants her to get his shit out of there before the police discover it. I believe you heard the tape that goes into that as well. *I assert to you that that testimony's uncontradicted.* We have no other definition of what went on there that day.

(emphasis added).

Defense counsel immediately objected and the parties held a sidebar conference with the court. Following the sidebar, the solicitor continued his closing argument without any instruction or comment from the court.[2]

During jury deliberations, defense counsel placed his objection on the record:

> Defense Counsel: I would like to make sure that we put on the record your ruling on my objection to the State's closing, and my position that it was a comment on my client's right not to testify and—

---

2. After the trial court's initial jury instructions, a bench conference was held off the record, upon which the trial court additionally charged the jury that the defendant was presumed innocent and his failure to testify did not create any presumption against him and could not be considered "in the slightest degree," as the burden of proof remained upon the State and the defendant was not required to testify.

The Court: In other words, what you're saying is if you use the word that it's uncontradicted, then that implies that the evidence is uncontradicted since he didn't himself contradict it?

Defense Counsel: Yes, sir.

The Court: I don't think it's quite that broad, I don't interpret it to be that. I see what you're saying, but I mean, you know, sometimes you cross-examine the State's witnesses and all and sometimes he was—if it could have been construed by that I think it's a stretch, and I don't see anything wrong with it that it would have—that it could have possibly resulted in any prejudice to the defendant. But your objection is duly noted.

On appeal, King argues the solicitor's statement regarding the lack of any contradiction by the defense concerning Kirken's interpretation of King's telephone message was an improper comment on King's decision not to testify. We disagree.

A solicitor's closing argument must be carefully tailored so it does not appeal to the personal biases of the jurors. *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996); *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981). Further, the argument may not be calculated to arouse the jurors' passions or prejudices and its content should stay within the record and its reasonable inferences. *Simmons v. State*, 331 S.C. 333, 503 S.E.2d 164 (1998). Moreover, the State cannot, through evidence or argument, comment upon a defendant's exercise of a constitutional right. *State v. Johnson*, 293 S.C. 321, 323, 360 S.E.2d 317, 319 (1987) ("When an accused asserts a constitutional right, it is impermissible for the state to comment upon or argue in favor of guilt or punishment based upon his assertion of that right.") (citation omitted).

The test of granting a new trial for alleged improper closing argument is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *State v. Patterson*, 324 S.C. 5, 482 S.E.2d 760 (1997); *State v. Coleman*, 301 S.C. 57, 389 S.E.2d 659 (1990); *see also State v.*

*Brisbon,* 323 S.C. 324, 474 S.E.2d 433 (1996) (ruling test of granting new trial for alleged improper closing argument of counsel is whether defendant was prejudiced to extent that he was denied a fair trial).

The appropriateness of a solicitor's closing argument is a matter left to the trial court's sound discretion. *State v. Copeland,* 321 S.C. 318, 468 S.E.2d 620 (1996). The appellate tribunal will not disturb the trial court's ruling regarding closing argument unless there is an abuse of that discretion. *State v. Penland,* 275 S.C. 537, 273 S.E.2d 765 (1981).

As a rule, a solicitor cannot comment directly or indirectly upon a defendant's failure to testify at trial. *Gill v. State,* 346 S.C. 209, 552 S.E.2d 26 (2001); *see Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (holding an accused has the right to remain silent and the exercise of that right cannot be used against him).

"However, even improper comments on a defendant's failure to testify do not automatically require reversal if they are not prejudicial to the defendant." *Gill,* 346 S.C. at 221, 552 S.E.2d at 33 (citation omitted). "The defendant bears the burden of demonstrating that improper comments on his refusal to testify deprived him of a fair trial. Furthermore, even if the solicitor makes an improper comment on the defendant's failure to testify, a curative instructive emphasizing the jury cannot consider [the] defendant's failure to testify against him will cure any potential error." *Id.* (citations omitted).

"Where the solicitor refers to certain evidence as uncontradicted and the defendant is the ***only*** person who could contradict that particular evidence, the statement is viewed as a comment on the defendant's failure to testify." *State v. Sweet,* 342 S.C. 342, 348, 536 S.E.2d 91, 94 (Ct.App. 2000) (emphasis added) (citation omitted).

In *Sweet,* the defendant did not testify. During closing arguments, the solicitor stated ***only*** the defendant could rebut the testimony of two accomplices who incriminated him. On appeal, this Court reversed the defendant's conviction, finding the solicitor's comments constituted a prejudicial comment on the defendant's failure to testify. *Id.* at 352, 536 S.E.2d at 96.

We noted the solicitor's statement was a direct comment on the defendant's failure to testify, that the court should have immediately addressed defense counsel's objection by issuing a curative instruction or declaring a mistrial, and the error was not harmless because the evidence in the case was "less than overwhelming." *Id.*

In the current appeal, unlike the circumstances in *Sweet*, the defendant is not the only person who could have contradicted the evidence characterized by the solicitor as "uncontradicted." King contacted Kirken through a three-way telephone call orchestrated by his mother. King's mother was therefore privy to the call to Kirken. King could have called her to testify about what she believed King to mean by his reference to "shit" in the recorded message. In our view, the solicitor's reference to Kirken's testimony as "uncontradicted" was not a comment on King's failure to testify as articulated by the rule in *Sweet*.

Alternatively, even if the solicitor's comments were improper, such comments do not automatically mandate reversal if they do not result in prejudice to the defendant. *Gill*, 346 S.C. at 221, 552 S.E.2d at 33; *State v. Cooper*, 334 S.C. 540, 514 S.E.2d 584 (1999); *see also State v. Mizell*, 332 S.C. 273, 285, 504 S.E.2d 338, 345 (Ct.App.1998) ("[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one.") (citation omitted).

When a *Doyle* violation is alleged, this Court must apply a harmless error analysis as set forth in *State v. Pickens*, 320 S.C. 528, 466 S.E.2d 364 (1996). To be harmless, the record must establish: (1) the reference to the defendant's right to silence was a single reference, which was not repeated or alluded to; (2) the solicitor did not tie the defendant's silence directly to his exculpatory story; (3) the exculpatory story was totally implausible; and (4) the evidence of guilt was overwhelming. *Id.* at 531, 466 S.E.2d at 366; *State v. Primus*, 341 S.C. 592, 535 S.E.2d 152 (Ct.App.2000), *cert. granted.* "[W]here a review of the entire record establishes the error is harmless beyond a reasonable doubt, the conviction should not be reversed." *Pickens*, 320 S.C. at 531, 466 S.E.2d at 366.

Based on the totality of the record, we find the solicitor's comment, if viewed as an impermissible reference to King's

failure to testify, was harmless error. First, the reference was limited to one isolated instance. Second, the comment was not directly related to King's exculpatory story, *i.e.*, that other persons had access to the trailer where the search warrant was executed. Finally, we find the evidence of King's guilt overwhelming based on the testimony that: (1) the crack cocaine and King's identification were recovered from the trailer; (2) King had previously admitted this was his residence; and (3) that he had previously sold drugs to the confidential informant and others from this same room, which was pertinent to the issue of intent.

## CONCLUSION

For the foregoing reasons, King's conviction and sentence for possession with intent to distribute crack cocaine are

**AFFIRMED.**

CURETON and GOOLSBY, JJ., concur.