600 S.E.2d 112

**The STATE, Respondent,**

v.

**Gilbert BOWIE, Appellant.**

**No. 3835.**

Court of Appeals of South Carolina.

Submitted June 10, 2004.

Decided June 28, 2004.

Rehearing Denied Aug. 18, 2004.

Assistant Appellate Defender Robert M. Pachak, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor Warren B. Giese, of Columbia, for Respondent.

ANDERSON, J.:

Gilbert Bowie appeals his conviction and sentence for trafficking in cocaine, 400 grams or more. He argues the trial court erred in refusing to suppress cocaine seized from a hotel room because the affidavit to the search warrant lacked probable cause. We affirm.[1]

### *FACTUAL/PROCEDURAL BACKGROUND*

On April 27, 2001, at approximately 7:00 p.m., deputies with the Richland County Sheriff's Department drove to the Days Inn on Garner's Ferry Road looking for a motel room reserved by Donald Williams, a known local drug dealer, and held for "Mr. Gill." The officers set up surveillance of the motel and observed Gilbert Bowie arrive around 9:00 p.m. in a

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Toyota Tercel with Florida tags. Bowie entered the lobby and informed the desk clerk: " 'I'm Mr. Gill, and you have a key for me.' " The clerk gave Bowie a key to Room 215 and Bowie walked upstairs.

At about 9:10 p.m., two men in a Dodge truck with Florida tags arrived at the motel. The men were later identified as Juan Poviones and Jose Barrocas. Poviones and Barrocas checked into Room 309. Around 9:30 p.m., Bowie left in the Toyota and Poviones and Barrocas left in the Dodge truck. The three men traveled to Cedar Terrace Shopping Center. They stopped at Eckerd drugstore and a Substation II restaurant, located just down the road from the motel. Poviones and Barrocas talked briefly to Bowie in the parking lot of the Substation, but then split up and appeared to not know each other. All three men returned to the motel at the same time. Poviones and Barrocas walked to Room 309 and Bowie entered Room 215. The officers attempted surveillance of both rooms. Although the door to Room 215 could not be seen, the officers noticed Bowie going to and from the elevator toward Room 215.

The officers obtained search warrants for both rooms after midnight. Upon entering Room 309, the officers encountered Poviones and Barrocas. Further, in the search of Room 309, the officers found a black duffel bag containing four yellow "brick-like" packages of cocaine, totaling 3,978 grams. The duffel bag looked exactly like a bag the officers had observed Bowie carrying into the motel earlier that night. The fingerprints on the packages of cocaine matched Bowie's fingerprints.

The Richland County Grand Jury indicted Bowie for trafficking in cocaine, 400 grams or more. At trial, defense counsel moved to suppress the cocaine seized from Room 309 because the affidavit to the search warrant lacked probable cause. The Circuit judge ruled: "[A]fter considering the two search warrants and their affidavits, . . . they are not on their face insufficient." The judge concluded: "Since based on the finding that the affidavits and the warrants are not insufficient, then I would find that testimony could be offered to supplement the affidavit." The court further found "there was a good faith effort by the officer in communicating with his

lieutenant to give all the facts, and that the fact that the magistrate did not include all of those in there, I don't think the warrant should be suppressed."

The jury found Bowie guilty of trafficking in cocaine, 400 grams or more. He was sentenced to thirty years imprisonment and a $200,000 fine.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001); *State v. Abdullah,* 357 S.C. 344, 592 S.E.2d 344 (Ct.App.2004). We are bound by the trial court's factual findings unless they are clearly erroneous. *Wilson,* 345 S.C. at 5, 545 S.E.2d at 829; *see also Abdullah,* 357 S.C. at 349, 592 S.E.2d at 347 ("On appeal from a suppression hearing, this court is bound by the circuit court's factual findings if any evidence supports the findings."). This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases. *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829. On review, we are limited to determining whether the trial judge abused his discretion. *State v. Reed,* 332 S.C. 35, 503 S.E.2d 747 (1998); *State v. Rochester,* 301 S.C. 196, 391 S.E.2d 244 (1990); *see also State v. Corey D.,* 339 S.C. 107, 529 S.E.2d 20 (2000) (an abuse of discretion is a conclusion with no reasonable factual support). This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence. *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829; *State v. Mattison,* 352 S.C. 577, 575 S.E.2d 852 (Ct.App.2003).

An appellate court reviewing the decision to issue a search warrant should decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. Dupree,* 354 S.C. 676, 583 S.E.2d 437 (Ct.App.2003); *State v. King,* 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002); *see also State v. Keith,* 356 S.C. 219, 588 S.E.2d 145 (Ct.App.2003) (noting that duty of reviewing court is to ensure that magistrate had substantial basis for concluding that probable cause existed). This review, like the determination by the magistrate, is governed by the "totality of the circumstances" test.

*State v. Jones,* 342 S.C. 121, 536 S.E.2d 675 (2000); *King,* 349 S.C. at 148, 561 S.E.2d at 643. The appellate court should give great deference to a magistrate's determination of probable cause. *State v. Weston,* 329 S.C. 287, 494 S.E.2d 801 (1997); *State v. Driggers,* 322 S.C. 506, 473 S.E.2d 57 (Ct.App. 1996); *see also State v. Sullivan,* 267 S.C. 610, 230 S.E.2d 621 (1976) (magistrate's determination of probable cause should be paid great deference by reviewing court).

## *LAW/ANALYSIS*
## I.  SEARCH WARRANT AFFIDAVIT

■ Bowie argues the affidavit to the search warrant for Room 309 lacked probable cause. He contends the trial judge erred in refusing to suppress cocaine seized from that room. We disagree.

The affidavit to the search warrant for Room 309 provided:

### DESCRIPTION OF PROPERTY SOUGHT

Cocaine, paraphernalia and paperwork associated with the sale, storage and use of cocaine.

### DESCRIPTION OF PREMISES (PERSON, PLACE OR THING) TO BE SEARCHED

7300 SUMTER HWY, DAYS INN MOTEL ROOM 309. THE LOCATION IS A THREE STORY MOTEL LOCATED ACROSS THE STREET FROM SHONEYS ON SUMTER HWY. THE ROOM TO BE SEARCHED IS NUMBER 309 ON THE THIRD FLOOR ON THE FRONT SIDE. SEARCH TO INCLUDE ALL PERSONS IN OR ASSOCIATED WITH ROOM 309 AND A SILVER DODGE TRUCK WITH FLORIDA REGISTRATION, T79XPH.

### REASON FOR AFFIANT'S BELIEF THAT THE PROPERTY SOUGHT IS ON THE SUBJECT PREMISES

The Richland County Sheriff's Department received information on this date from a confidential and reliable informant that a subject named "Gill" would arrive from Florida

with a quantity of cocaine. The information was specific that the subject would arrive around 9 pm and would ask for a key to room 215, the location to be searched. Surveillance was established at the motel. A subject driving a green Toyota with Florida registration, UO4BBE, arrived at approximately 9 pm, and identified himself and received the room key to room 215. The Toyota is registered to a Jesus Rodriguez who had a prior arrest for narcotics. The subject was followed from the location to several businesses including a Eckerds and a sandwich shop on Garners Ferry Road. Two other subjects in a Dodge truck with Florida registration, T79XPH, were observed meeting this first subject. These subjects returned to the motel, parked in the rear parking lot and entered through a rear door. The motel confirmed that these two subjects are in room 309, the location to be searched. Based on the observations of the agents these subjects were together and believed to be involved in the trafficking of illegal narcotics. The informant is reliable in that it has provided information on at least one occasion that led to at least one arrest and the seizure of a quantity of cocaine. Based on the totality of the information including the corroborating surveillance agents believe that the subjects have a quantity of cocaine in their possession. Through the affiant's and other Richland County Sheriff's Department Narcotic officers experience in drug enforcement, it is known that subjects present at the scene of illegal drug distribution and/or possession commonly have drugs in their possession and/or stored and/or transported in their vehicles.

██ A magistrate may issue a search warrant only upon a finding of probable cause. *State v. Tench,* 353 S.C. 531, 579 S.E.2d 314 (2003); *State v. Weston,* 329 S.C. 287, 494 S.E.2d 801 (1997); *State v. King,* 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002). "The South Carolina General Assembly has enacted a requirement that search warrants may be issued 'only upon affidavit sworn to before the magistrate ... establishing the grounds for the warrant.'" *State v. Bellamy,* 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999) (quoting S.C.Code Ann. § 17–13–140 (1985)).

■ The affidavit must contain sufficient underlying facts and information upon which the magistrate may make a determination of probable cause. *State v. Dupree*, 354 S.C. 676, 583 S.E.2d 437 (Ct.App.2003); *State v. Philpot*, 317 S.C. 458, 454 S.E.2d 905 (Ct.App.1995). For an affidavit in support of a search warrant to show probable cause, it must state facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time. *State v. Winborne*, 273 S.C. 62, 254 S.E.2d 297 (1979). The magistrate should determine probable cause based on all of the information available to the magistrate at the time the warrant was issued. *State v. Driggers*, 322 S.C. 506, 473 S.E.2d 57 (Ct. App.1996); *State v. Bultron*, 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995). In determining the validity of the warrant, a reviewing court may consider only information brought to the magistrate's attention. *State v. Owen*, 275 S.C. 586, 274 S.E.2d 510 (1981); *State v. Martin*, 347 S.C. 522, 556 S.E.2d 706 (Ct.App.2001).

■ To determine probable cause, we look to the totality of the circumstances test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The totality of the circumstances test establishes:

[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238, 103 S.Ct. 2317; *see also State v. Jones*, 342 S.C. 121, 536 S.E.2d 675 (2000) (stating that under totality of circumstances test, reviewing court considers all circumstances, including status, basis of knowledge, and veracity of informant, when determining whether or not probable cause existed to issue search warrant).

■ A magistrate must determine probable cause based on all the information available to him at the time of issuance of the warrant. *State v. Crane*, 296 S.C. 336, 372 S.E.2d 587 (1988). Affidavits are not meticulously drawn by lawyers, but are normally drafted by non-lawyers in the haste of a criminal

investigation, and should therefore be viewed in a common sense and realistic fashion. *State v. Sullivan,* 267 S.C. 610, 230 S.E.2d 621 (1976); *Dupree,* 354 S.C. at 683, 583 S.E.2d at 441. Affidavits must be judged on the facts presented and not on the precise wording used. *State v. Viard,* 276 S.C. 147, 276 S.E.2d 531 (1981).

■ Our task is to decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. Adolphe,* 314 S.C. 89, 441 S.E.2d 832 (Ct.App.1994); *see also State v. 192 Coin–Operated Video Game Machs.,* 338 S.C. 176, 525 S.E.2d 872 (2000) (finding that as long as the magistrate had a substantial basis for concluding a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more). Probable cause is a flexible, common-sense standard. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The term "probable cause" does not import absolute certainty. *State v. Bennett,* 256 S.C. 234, 182 S.E.2d 291 (1971); *State v. Arnold,* 319 S.C. 256, 460 S.E.2d 403 (Ct.App. 1995). Instead, it "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' " that an offense has been committed and that the accused committed it. *Brown,* 460 U.S. at 742, 103 S.Ct. 1535 (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Probable cause "does not demand any showing that such a belief be correct or more likely true than false." *Brown,* 460 U.S. at 742, 103 S.Ct. 1535. In determining whether a search warrant should be issued, magistrates are concerned with probabilities and not certainties. *Sullivan,* 267 S.C. at 617, 230 S.E.2d at 624.

■ Searches based on warrants will be given judicial deference to the extent that an otherwise marginal search may be justified if it meets a realistic standard of probable cause. *Bennett,* 256 S.C. at 241, 182 S.E.2d at 294; *Arnold,* 319 S.C. at 260, 460 S.E.2d at 405. A determination of probable cause depends upon the totality of the circumstances. *State v. Adams,* 291 S.C. 132, 352 S.E.2d 483 (1987).

The magistrate made a practical, common-sense decision to issue the search warrant for Room 309, given the facts in the affidavit that another Florida car containing two other subjects met Bowie and returned to the motel where he was

staying and that the agents believed all the subjects were together and involved in trafficking. A logical interpretation of the affidavit accompanying the search warrant in this case, and the deference which must be accorded the magistrate, overcome any asserted deficiency. Based on the totality of the circumstances, we hold the affidavit provided the magistrate with a substantial basis for finding probable cause to search Room 309. Therefore, the trial judge properly found the affidavit was not facially insufficient.

## II. SWORN ORAL TESTIMONY

■ Even if the search warrant affidavit was insufficient on its face to establish probable cause, we nonetheless find the affidavit was properly supplemented by sworn oral testimony. The supplemental oral testimony to the magistrate by Agent Michael Poole is curative. Agent Poole, of the Richland County Sheriff's Department, testified:

Q. [Y]ou ultimately were put under oath in order to swear out the search warrants when Lieutenant Senn arrived?

A. Yes, sir, I was put under oath.

Q. Agent Poole, if you would tell the Court what additional sworn testimony you gave to Judge Davis in addition to what was contained inside the affidavits for the search warrant for room 215, and more specifically, room 309?

A. After [Bowie] arrived and we realized that the other two defendants in 309, that they appeared to be together, I relayed to him that when they were around the motel they very distinctly acted like they did not know each other, that they were not together. But when we saw them at the Subway and at the drug store they appeared to be together; that they were following each other around, the truck would go first and the other car behind, everywhere they went that they were obviously together, but they distinctly acted like they were not together at the motel.

Q. Did you provide any information regarding when it was they had arrived at the motel?

A. Yes. I told him it appeared that he was supposed to arrive at 9 o'clock and Mr. Gill [Bowie] arrived right at 9 or a couple minutes after.

Q. What about the other two individuals, is that when they arrived?

A. No, right shortly after that.

Q. Do you recall whether you relayed that to the judge?

A. Yes, that they came in a few minutes later.

Q. Any other information besides what is contained inside the affidavits for rooms 309 and 215, any other information that was provided to Judge Davis regarding the probable cause surrounding room 309?

A. I think there was one point where [Bowie] appeared to circle the parking lot later on before we had a warrant signed, like he was just circling to make sure, it appeared to me, like things were safe.

Q. In your talking with Judge Davis, did you at any point in time communicate to him whether the three of them appeared to be there together?

A. I told him in my opinion they appeared to be together and they were deliberately trying to represent that they were not.

Q. You were sworn at the judge's office when you obtained these search warrants?

A. Yes, I was.

Sworn oral testimony to the magistrate may supplement a search warrant insufficient in itself to establish probable cause. *State v. Johnson,* 302 S.C. 243, 395 S.E.2d 167 (1990); *State v. McKnight,* 291 S.C. 110, 352 S.E.2d 471 (1987); *State v. Martin,* 347 S.C. 522, 556 S.E.2d 706 (Ct.App. 2001); *see also State v. Jones,* 342 S.C. 121, 128, 536 S.E.2d 675, 678–79 (2000) ("Oral testimony may also be used in this state to supplement search warrant affidavits which are facially insufficient to establish probable cause."); *State v. Weston,* 329 S.C. 287, 290, 494 S.E.2d 801, 802 (1997) ("A search warrant that is insufficient in itself to establish probable cause may be supplemented by sworn oral testimony."); *State v. Crane,* 296 S.C. 336, 372 S.E.2d 587 (1988) (holding the magistrate should determine probable cause based on all the information available to him at the time the warrant is issued, including sworn oral testimony).

Agent Poole's supplemental oral testimony regarding Bowie's interaction with Poviones and Barrocas, the two men staying in Room 309—specifically, their traveling together to Eckerd and the Substation II, and their representation in public of not knowing each other—bolsters the magistrate's finding of probable cause and the trial court's refusal to suppress the cocaine found in Room 309.

## III. REASONABLE EXPECTATION OF PRIVACY/STANDING

Bowie asserts he has standing to argue "there was no probable cause to support the search of Room 309" even though Room 309 was not his room. We disagree.

For the sake of clarity, we emphasize that the concept of "standing" in the context of a Fourth Amendment challenge has been diminished and is now encapsulated within a "reasonable expectation of privacy" analysis. The United States Supreme Court has indicated a preference for an analysis focusing on "the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also State v. Hiott*, 276 S.C. 72, 76–77, 276 S.E.2d 163, 165 (1981) ("[T]he United States Supreme Court has recently shifted away from a 'standing' approach to an inquiry focusing directly on the substantive issue of whether the claimant possessed a 'legitimate expectation of privacy' in the area searched."). "[I]n determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (internal quotations omitted).

Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. *See Rakas*, 439 U.S. at 133–34, 99 S.Ct. 421; *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *State v. Missouri*, 352 S.C. 121, 572 S.E.2d 467 (Ct.App.2002). Thus, a person seeking to have

evidence suppressed based upon a Fourth Amendment violation "must establish that his own Fourth Amendment rights were violated" by the search and seizure. *State v. McKnight,* 291 S.C. 110, 114–15, 352 S.E.2d 471, 473 (1987) (citing *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)); *see also Rakas,* 439 U.S. at 138, 99 S.Ct. 421 (" '[R]ights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.' ").

A defendant seeking to suppress evidence on Fourth Amendment grounds bears the burden of proving he had a reasonable expectation of privacy in the area searched or the item seized. *United States v. Rusher,* 966 F.2d 868 (4th Cir.1992); *see also Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (declaring a legitimate expectation of privacy is necessary to trigger Fourth Amendment protections); *McKnight,* 291 S.C. at 115, 352 S.E.2d at 473 (stating defendant who seeks to suppress evidence on Fourth Amendment grounds must demonstrate he has a legitimate expectation of privacy in connection with the searched premises in order to have standing to challenge the search); *State v. Miller,* Op. No. 3784 (S.C. Ct.App. filed April 26, 2004) (Shearouse Adv. Sh. No. 17 at 83) (noting where one does not have an expectation of privacy, he may not challenge the admission of evidence based on the violation of another's right to privacy). "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." *Minnesota v. Olson,* 495 U.S. 91, 95–96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (internal quotations omitted). "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Carter,* 525 U.S. at 88, 119 S.Ct. 469 (internal quotations omitted). "[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a

legitimate expectation of privacy in the invaded place." *Rakas,* 439 U.S. at 143, 99 S.Ct. 421.

For Bowie to establish a Fourth Amendment violation, he must show a personal and legitimate expectation of privacy in Room 309. *See Olson,* 495 U.S. at 95–97, 110 S.Ct. 1684; *Rakas,* 439 U.S. at 143–44, 99 S.Ct. 421; *Missouri,* 352 S.C. at 129–30, 572 S.E.2d at 470–71. Poviones and Barrocas occupied Room 309, not Bowie. Therefore, Bowie did not have a personal and legitimate expectation of privacy in a room he did not even occupy. The fact that Bowie had associates staying in Room 309 is not enough to grant him an expectation of privacy in that room. *See Missouri,* 352 S.C. at 129–30, 572 S.E.2d at 471 (holding defendant, who was an occasional overnight guest, had no expectation of privacy in friend's apartment where he was merely a permittee on the premises on the date in question). Moreover, Bowie's duffel bag in Room 309 does not confer an expectation of privacy.

Bowie does not have a *REASONABLE EXPECTATION OF PRIVACY* to challenge the existence of probable cause in regard to the search of Room 309.

## CONCLUSION

Based on the foregoing, Bowie's conviction and sentence are **AFFIRMED.**

HUFF and KITTREDGE, JJ., concur.