644 S.E.2d 66

The STATE, Respondent,

v.

Daniel EDWARDS, Jr., Appellant.

No. 4213.

Court of Appeals of South Carolina.

Heard Feb. 2, 2007.
Decided March 12, 2007.
Rehearing Denied April 27, 2007.

Tara Shurling, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; Solicitor John R. Justice, of Chester, for Respondent.

STILWELL, J.:

Daniel Edwards, Jr. appeals his convictions for three counts of criminal sexual conduct with a minor. We affirm.

## FACTS

The victim's parents divorced when she was five or six years old. She lived with her father until she was ten but had regular visitation with her mother and her mother's husband, the defendant, Daniel Edwards, Jr. When the victim was ten years old, she resumed living with her mother and Edwards. The victim's relationship with Edwards prior to this time was "a good one, like father/daughter." She stated they would go hunting and fishing together and she felt comfortable with him "until things started to happen." It was after the victim moved in with her mother and Edwards that the sexual assaults began.

Edwards was indicted on three counts of second-degree criminal sexual conduct with a minor, and his case was tried November 15–17, 2004. The victim was sixteen at the time of trial.

The trial began with the victim's testimony. The jury was excused to allow the solicitor to proffer evidence regarding prior instances of sexual abuse toward the victim by Edwards. The victim testified that the sexual abuse began when she, her mother, and Edwards lived on Golf Course Road in October, 1999. She stated she remembered the approximate date because it was "a couple of days after he got out of jail for my sister." She stated that Edwards started by sitting by her bed and touching her breasts and "down below." Edwards continued the abuse a few weeks later when they moved to Nickey Road. When her mother was at work in the evenings, he would sit by her bed and touch and rub her. The victim testified Edwards had sexual intercourse with her four times, three of which were on Nickey Road, as well as having her look at pornographic magazines and watch pornographic tapes. The victim testified that on August 25, 2000, her mother left for work, and Edwards took her into his bedroom, took her clothes off, and began touching her breasts. She said when he stepped out of the bedroom for a minute, she slipped out the back door and was able to call for help.

Edwards argued the evidence was inadmissible, because there was no common scheme pursuant to *Lyle*,[1] and because it was more prejudicial than probative. The trial judge disagreed and permitted the testimony. Counsel noted his continuing objection to the admission of the evidence.

In the course of her testimony, the solicitor asked the victim why she had complied with the things Edwards asked her to do. She answered, "because I have already heard that he's been hitting my mother." Edwards objected and moved for a mistrial, arguing he did not believe there was a curative instruction that could sufficiently remove the prejudice created by the victim's statement. The trial judge denied the motion for a mistrial and gave a curative instruction when the jury returned to the courtroom.

The victim's mother also testified in the case regarding threats made against the victim by Edwards. The record indicates that though they were then estranged, the victim's mother stayed with Edwards for three years after the charges were brought and was still in communication with him up to

---

1. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

the time of the trial. The victim's mother testified that Edwards told her to tell the victim that she should not show up in court "because he had a hit out on her, that she wouldn't make it through the courtroom doors." The victim's mother also testified that Edwards said if he was convicted he would kill the victim when he got out of jail. The trial judge allowed this testimony finding that Edwards' statements could be construed as an admission of guilt and a threat to punish the witness should the jury find him guilty.

At the conclusion of the trial, the jury found Edwards guilty of all three charges. Edwards raises three issues on appeal, alleging the trial judge erred in (1) admitting testimony regarding prior sexual conduct between the victim and Edwards, (2) denying Edwards' motion for mistrial after the victim testified that Edwards had hit the victim's mother, and (3) in admitting testimony regarding threats made against the victim if she testified in court.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001); *State v. Wood*, 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct.App.2004). We are bound by the trial court's factual findings unless they are clearly erroneous. *See State v. Abdullah*, 357 S.C. 344, 349, 592 S.E.2d 344, 347 (Ct.App.2004) ("On appeal from a suppression hearing, this court is bound by the circuit court's factual findings if any evidence supports the findings."). "This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829. The admission or exclusion of evidence is left to the sound discretion of the trial judge. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error, which results in prejudice to the defendant. *State v. Hamilton*, 344 S.C. 344, 353, 543 S.E.2d 586, 591 (Ct.App.2001), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005).

**LAW/ANALYSIS**

## I. Admission of Prior Bad Acts

 Edwards contends the trial judge erred in admitting evidence of prior acts of sexual misconduct, arguing the evidence did not constitute a common scheme or plan under *Mathis* and *Lyle*. We disagree.

The trial judge determined that based largely on *State v. Mathis*,[2] he would permit "some degree of testimony" relating to Edwards' alleged prior misconduct and that the probative value of the testimony outweighed the prejudice to Edwards under Rule 403 of the South Carolina Rules of Evidence.

 Generally, South Carolina law precludes evidence of prior crimes or other bad acts to prove the defendant's guilt for the crime charged. *State v. Pagan*, 369 S.C. 201, 211, 631 S.E.2d 262, 267 (2006); *State v. Mathis*, 359 S.C. 450, 462, 597 S.E.2d 872, 878 (Ct.App.2004); *see also State v. Beck*, 342 S.C. 129, 135, 536 S.E.2d 679, 682 (2000) (finding that evidence of prior crimes or bad acts is inadmissible to prove bad character of defendant or that he acted in conformity therewith). Such evidence is admissible, however, when it tends to establish "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others." *State v. Lyle*, 125 S.C. 406, 416, 118 S.E. 803, 807 (1923); *see also* Rule 404(b), SCRE.

The common scheme or plan exception is commonly applied in cases of sexual assault where conduct both before and after the acts charged is held admissible to show "continued illicit intercourse between the same parties." *Mathis*, 359 S.C. at 463, 597 S.E.2d at 879 (citing *State v. Weaverling*, 337 S.C. 460, 469, 523 S.E.2d 787, 791 (Ct.App.1999)). In *Mathis*, the court admitted evidence of three earlier assaults on the victim where "all [three were] attempted in the same manner and under similar circumstances." *Id.* at 464, 597 S.E.2d at 879. "Overall, the three prior incidents of sexual misconduct by Mathis show the same illicit conduct with the victim over the course of the nine months prior to [the date of the charged incident]." *Id.* at 464–65, 597 S.E.2d at 880.

---

**2.** *State v. Mathis,* 359 S.C. 450, 597 S.E.2d 872 (Ct.App.2004).

In the present case, we find the admission of evidence of prior bad acts is consistent with the exceptions found in *Lyle* and particularly in *Mathis*. Edwards' prior acts occurred over an approximately ten-month span with the same victim and always when the victim's mother was at work. The conduct began with inappropriate touching, the removal of the victim's clothes, and finally escalated to sexual intercourse. Edwards also told the victim to "keep this a secret between me and you" and that he would "buy [her] things" to keep her quiet. These acts constitute a "continued illicit intercourse between the same parties." *See Mathis*, 359 S.C. at 463, 597 S.E.2d at 879. Additionally, we agree with the trial judge that the probative value of the alleged prior bad acts outweighs the prejudicial effect of admitting the evidence.

## II. Denial of Motion for Mistrial

Edwards argues the trial judge erred in denying his motion for a mistrial where the jury improperly heard evidence that Edwards had hit his wife. We disagree.

The decision to grant or deny a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *State v. Stanley*, 365 S.C. 24, 33, 615 S.E.2d 455, 460 (Ct.App.2005); *State v. Rowlands*, 343 S.C. 454, 458, 539 S.E.2d 717, 719 (Ct.App.2000). Granting of a mistrial is a serious and extreme measure which should only be taken when the prejudice can be removed no other way. *Stanley*, 365 S.C. at 34, 615 S.E.2d at 460. "Generally, a curative instruction to disregard the testimony is deemed to have cured any alleged error." *State v. Walker*, 366 S.C. 643, 658, 623 S.E.2d 122, 129 (Ct.App.2005); *State v. Patterson*, 337 S.C. 215, 226, 522 S.E.2d 845, 850 (Ct.App.1999).

The trial judge found the victim's statement that she "heard he [Edwards] had been hitting [her] mother" was "a classic non-hearsay statement because it's not offered for the truth of the matter asserted." We agree. The victim's statement went to her state of mind and was not offered to establish that Edwards had actually ever hit her mother. It

was offered to explain why the victim behaved as she did.[3] Consequently, the statement was admissible.

■ Furthermore, we find that any prejudice to Edwards was cured by the judge's curative instruction. The jury was instructed to "disregard the last statement given by [the] witness in response to a question that was asked of her," and the trial resumed. The instruction was simple and refrained from reiterating or emphasizing the statement as much as possible. Even though the trial judge noted Edward's continuing objection, we find the instruction cured any alleged error. We can discern no abuse of discretion in the judge's denial of Edwards' motion for mistrial.

## III. Admission of Threats Against a Witness

■ Edwards argues the trial judge erred in admitting evidence of alleged threats against the victim. We disagree.

This appears to be a novel issue to South Carolina, as we have been unable to locate any cases affirming the introduction of such threats into evidence. There are cases, however, addressing the subject but disallowing the evidence, primarily because the threats could not be directly attributed to the defendant. The first such case was *State v. Rogers*, 96 S.C. 350, 80 S.E. 620 (1914), in which the trial court admitted into evidence an unsigned letter threatening one of the state's witnesses. The defendant's conviction was reversed, and in doing so the court stated,

[h]is Honor should not have admitted in evidence the letter complained of in the first exception ... without connecting the defendant in some manner with it. It would have been better to require the State then and there after it was admitted to connect the defendant with it, and upon failure to do so to have ruled it out.

*Id.* at 352, 80 S.E. at 621. Similarly, in *Mincey v. State*, 314 S.C. 355, 358, 444 S.E.2d 510, 511 (1994), the court concluded it was error to allow closing argument about threats or dangers to witnesses unless there was evidence that connected the defendant to such threats.

---

**3.** The trial judge found this statement was not intentionally elicited by the prosecution.

These cases seem to indicate, without so holding, that had the threats been connected to the defendant they would have been appropriately admitted into evidence. Obviously, such threats and other attempts to intimidate witnesses can and do result in criminal charges pursuant to section 16–9–340 of the South Carolina Code (Rev. 2003). *See State v. Preslar*, 364 S.C. 466, 613 S.E.2d 381 (Ct.App.2005) (affirming defendant's conviction for intimidating victim/witness in connection with his trial for criminal sexual conduct).

Lacking explicit precedent in this state, we turn to other jurisdictions to seek guidance. In doing so, we find many other jurisdictions, particularly federal courts, including the Fourth Circuit Court of Appeals, have addressed the issue of the admissibility during the trial of threats against a witness made by the defendant. The federal court cases generally conclude such threats indicate the defendant's "consciousness of guilt" and are therefore admissible pursuant to Rule 404(b) of the Federal Rules of Evidence.[4] *See U.S. v. Van Metre*, 150 F.3d 339, 352 (4th Cir.1998); *U.S. v. Guerrero–Cortez*, 110 F.3d 647, 652 (8th Cir.1997) (acknowledging that "[a]n effort to intimidate a witness tends to show consciousness of guilt"); *U.S. v. Gatto*, 995 F.2d 449, 454–55 (3d Cir.1993) (holding that evidence of threats or intimidation of a witness is admissible under Rule 404(b) to show consciousness of guilt); *U.S. v. Maddox*, 944 F.2d 1223, 1230 (6th Cir.1991) ("[S]poliation evidence, including evidence that the defendant threatened a witness, is generally admissible because it is probative of consciousness of guilt."); *U.S. v. Mickens*, 926 F.2d 1323, 1329 (2d Cir.1991) (holding that an effort to intimidate a witness is

---

4. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed.R.Evid. 404(b). Rule 404(b) of the South Carolina Rules of Evidence is similar to the federal rule, although as indicated by the reporter's comments, our state rule is slightly more restrictive regarding for what purposes evidence of other bad acts may be introduced. It provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Rule 404(b), SCRE.

relevant to the issue of the defendant's state of mind and admissible under Rule 404(b)); *U.S. v. Pina,* 844 F.2d 1, 9 (1st Cir.1988) (holding that defendant's threats against adverse witness is probative because it shows "that the defendant is willing to go to extreme measures to exclude relevant evidence from trial").

Many state courts also permit the admission of evidence of threats against a witness. *See People v. Iannone,* 2 A.D.3d 1283, 769 N.Y.S.2d 676, 678 (2003) ("Where, as here, there is some evidence connecting defendant to those threats, testimony concerning the threats is admissible on the issue of consciousness of guilt."); *State v. Soke,* 105 Ohio App.3d 226, 663 N.E.2d 986, 1001 (1995) ("[W]e note that evidence of threats or intimidation of witnesses reflects a consciousness of guilt and is admissible as admission by conduct."); *State v. Hicks,* 333 N.C. 467, 428 S.E.2d 167, 177 (1993) (*overruled on other grounds by State v. Buchanan,* 353 N.C. 332, 543 S.E.2d 823 (2001)) ("An attempt by a defendant to intimidate a witness in an effort to prevent the witness from testifying or to induce the witness to testify falsely in his favor is relevant to show the defendant's awareness of his guilt."); *Ransom v. State,* 920 S.W.2d 288, 299 (Tex.Crim.App.1994) (holding criminal acts designed to reduce the likelihood of conviction, including threats against witnesses, are admissible under Rule 404(b) as showing "consciousness of guilt"); *People v. Lucas,* 151 Ill.2d 461, 177 Ill.Dec. 390, 603 N.E.2d 460, 471 (1992) ("[E]vidence of a plan to eliminate witnesses is admissible to show a consciousness of guilt where the scheme is connected to the defendant. . . ."); *Bain v. State,* 239 Ga.App. 696, 521 S.E.2d 832, 835 (1999) (admitting evidence of defendant's threats against prosecution witness as "indicating a consciousness of guilt"); *Ragland v. Com.,* 16 Va.App. 913, 434 S.E.2d 675, 679 (1993) (quoting *McMillan v. Com.,* 188 Va. 429, 50 S.E.2d 428, 430 (1948)) ("Evidence that a defendant 'procured, or attempted to procure, the absence of a witness, or to bribe or suppress testimony against him, is admissible, as it tends to show the unrighteousness of the defendant's cause and a consciousness of guilt.' "); and *People v. Pinholster,* 1 Cal.4th 865, 4 Cal.Rptr.2d 765, 824 P.2d 571, 611 (1992) (admitting evidence of threatening phone call to prosecution witness as showing "consciousness of guilt").

While the precedents from other jurisdictions are not controlling, we find them persuasive and in this case elect to adopt their analysis. Just as conflicting statements and attempts to flee are indicative of "guilty knowledge and intent," [5] so too are the threats communicated here. Consequently, the trial judge did not err in admitting the evidence regarding threats by Edwards against the victim/witness.

We find the trial judge did not err in admitting prior acts of sexual conduct, denying a mistrial, and admitting evidence of threats against the victim. The decision of the trial judge is accordingly

**AFFIRMED.**

HEARN, C.J., and GOOLSBY, J., concur.

---

5. *Town of Hartsville v. Munger*, 93 S.C. 527, 529, 77 S.E. 219, 219 (1913); *see also State v. Walker*, 366 S.C. 643, 655, 623 S.E.2d 122, 128 (Ct.App.2005) ("Unexplained flight is admissible as indicating consciousness of guilt, for it is not as likely that one who is blameless and conscious of that fact would flee.").