PREHEARING REPORT

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Anthony Douglas, Appellant.
 
 
 

Appeal From Marlboro County
 Edward B. Cottingham, Circuit Court Judge

Unpublished Opinion No. 2007-UP-496
 Submitted October 1, 2007  Filed October
 16, 2007

AFFIRMED

 
 
 
 Appellate Defender Katherine H. Hudgins, of Columbia and Douglas
 Jennings, Jr., of Bennettsville, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant
 Attorney General Shawn L. Reeves, all of Columbia; and Solicitor Jay E. Hodge,
 Jr., of Cheraw, for Respondent.
 
 
 

PER CURIAM: In July
 2005, Anthony Douglas was tried and convicted by a Marlboro County jury of distribution of crack cocaine. Douglas timely appeals this conviction contending
 he was deprived of his right to a fair trial due to a police officers
 testimony regarding prior drug purchases from Douglas, the solicitors closing
 argument remarks on physical evidence not introduced to the jury, and the solicitors
 comment upon the pervasiveness of drugs in Marlboro County during his closing
 argument.  Douglas argues the trial court erred in denying his motion for
 mistrial on these three grounds.  We affirm.[1]
FACTS
In
 March 2004, Robert Candrilli (Candrilli), a confidential informant, planned and
 executed a drug purchase under the auspices of the Marlboro County Sheriffs
 Department. Candrilli met Officers George McLeod (Officer McLeod) and Robert
 Bryant (Officer Bryant) in a secluded area where the officers searched him for
 drugs and money before attaching a wire or listening device to Candrilli.
 Candrilli proceeded to the Crossroads Grocery where he used a payphone to call Douglass cell-phone and request twenty dollars worth of crack cocaine. Douglas arrived ten
 minutes later in a burgundy Buick, gave Candrilli a substance later determined
 to be .15 grams of crack cocaine, collected twenty dollars, and drove away from
 the pay phone booth. 
As
 Douglas drove away from Candrilli, Douglas passed by Officer McLeod who was
 parked on a dirt road a few hundred yards from Crossroads Grocery.  While
 Officer McLeod could not see the actual exchange of drugs for money, he could
 identify Douglas as the driver of the passing burgundy Buick. 
Immediately
 after the drug transaction, Officer Bryant collected Candrilli from Crossroads
 Grocery and drove him to a secluded location where they met Officer McLeod.
 Candrilli surrendered the crack he had purchased from Douglas and was searched
 again by the officers.  Douglas was arrested several weeks later and
 indicted for distribution of crack cocaine.  
During
 pre-trial motions the trial court ruled that all testimony should be limited to
 the events of March 15, 2004, and witnesses should refrain from discussing Douglass prior drug convictions. Upon cross-examination, Officer McLeod testified he was
 able to identify Douglas as the driver of the burgundy Buick because the
 Marlboro County Sheriffs Department had previously purchased drugs from Douglas. The trial court immediately gave curative instructions that the jury was to
 disregard any testimony regarding any activity of any kind other than the
 events on March 15. The trial court admonished the jury that should they choose
 to accept Officer McLeods testimony, it was to be used for identification
 purposes only.  
The
 jury heard testimony from Candrilli regarding the date of the drug transaction,
 Douglass cell phone number, and the pay phone number at Crossroads Grocery.  Candrilli
 recited the date and the phone numbers from a slip of paper he possessed on the
 witness stand.  During cross-examination Candrilli stated he wrote the
 date and time of the drug transaction on the paper but other people had written
 down the numbers for Douglass cell phone and the pay phone at Crossroads
 Grocery. Candrilli testified the paper was from his day-timer, however, during
 closing arguments the solicitor matched the paper to his legal pad. The
 solicitor further explained that he wrote down the phone numbers so Candrilli
 could refresh his memory on the witness stand. 
In
 his closing argument the solicitor also commented upon the pervading nature of
 drugs in Marlboro County schools and areas around Marlboro County. He continued to say that if Douglas were found guilty, the jury would be doing this
 community and this society a wonderful, wonderful favor by taking a drug dealer
 off of the streets.  After the solicitor finished his closing argument,
 Douglass counsel waited until the jury had been charged before making a
 motion for mistrial based on the solicitors closing. 
STANDARD OF REVIEW
The decision to grant or deny a mistrial is
 within the sound discretion of the trial court and will not be overturned on
 appeal absent an abuse of discretion amounting to an error of law. State v.
 Stanley, 365 S.C. 24, 33, 615 S.E.2d 455, 460 (Ct. App. 2005).  A mistrial should only be granted when absolutely
 necessary, and a defendant must show both error and resulting prejudice in
 order to be entitled to a mistrial. Id.  The granting of a motion for
 mistrial is an extreme measure which should be taken only where an incident is
 so grievous that its prejudicial effect can be removed no other way. Id.   
LAW/ANALYSIS

Douglas
 argues the trial court erred in failing to grant his motion for mistrial based
 on the following three events during his trial: (1) Officer McLeods testimony
 on cross-examination regarding Douglass prior involvement in drug transactions
 other than the March 15, 2004 transaction at issue; (2) the solicitors closing
 argument discussion of a slip of paper the confidential informant used to
 recall phone numbers and dates while on the witness stand; and (3) the
 solicitors closing argument remarks on the universal problem of drugs and the
 presence of drugs in Marlboro County. We disagree.
I. Officers Testimony
During
 cross-examination of Officer McLeod, Douglass counsel inquired as to how
 Officer McLeod could look into a vehicle approaching from the direction of the
 Crossroads Grocery and identify the driver. Officer McLeod warned Douglass
 counsel he may not like the answer and when Douglass counsel pressed him,
 Officer McLeod testified that he could, identify [the defendant] because that
 was not the first time the Marlboro County Sherriffs Office had purchased
 drugs from [the] defendant. Douglas argues this testimony should have resulted
 in a mistrial.  We disagree.
Evidence of a defendant's crimes, wrongs, or acts is generally not
 admissible. Rule 404(b), SCRE.  Our courts view a defendant's previous
 distribution of drugs as a past bad act. State v. King,
 349 S.C. 142, 152, 561 S.E.2d 640, 645 (Ct. App. 2002).  In State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923),
 and incorporated in Rule 404(b), SCRE, a defendant's prior bad acts may be
 admitted to show: (1) motive; (2) identity; (3) the existence of a common
 scheme or plan; (4) the absence of mistake or accident; or (5) intent.
Pursuant to Rule 403, SCRE, any prejudice resulting from the
 admission of evidence under Rule 404(b), SCRE, must be outweighed by its
 probative value.  State v. Fletcher, 363 S.C. 221, 242, 609 S.E.2d 572,
 583 (Ct. App. 2005). The determination of prejudice must be based on the
 entire record and the result will generally turn on the facts of each case. Id.  Generally, a curative
 instruction to disregard testimony or evidence is deemed to have cured any
 alleged error. State v. Walker, 366 S.C. 643, 658, 623 S.E.2d 122, 129-30
 (Ct. App. 2005).
In
 this case, Douglass prior drug transactions were introduced to explain how
 Officer McLeod knew Douglas was the driver of the vehicle.  Douglass counsel attempted
 to discredit the eyewitnesses testimony by arguing that Douglas drives a white
 Mitsubishi sedan and a black Honda Accord, not a burgundy Buick.  In response
 to the challenges regarding the Buick drivers identity, Officer McLeod
 testified he was able to identify Douglas due to prior drug transactions
 involving Douglas.    
Following Officer McLeods statement, Douglass counsel alerted
 the trial judge that he had a motion to raise. The trial judge denied any
 potential motion by replying, [w]ere going forward, and immediately
 instructed the jury they were not to consider that testimony for any purpose
 than identification. The trial judges comments note that Douglass counsel
 opened the door to this testimony by repeated questions of how Officer McLeod
 could identify Douglas in the automobile. The trial judges curative
 instructions further emphasized that Douglas was only charged with distribution
 of crack cocaine resulting from an event on March 15, 2004, and the jury was to
 disregard any testimony involving any activity of any kind other than if
 [they] care to use it for identification only. 
We find that Officer McLeods remarks on Douglass prior drug
 sales were allowed into evidence for the purpose of resolving identity, one of
 the five exceptions of Rule 404(b), SCRE, which allows prior bad acts to be
 admitted into evidence.  Although the trial court did not conduct a Rule 403,
 SCRE, on-the-record analysis in matters pertaining to the admission of prior
 bad acts, the curative instructions evince the trial courts clear balancing of
 probative value versus prejudicial effect. State v. King, 349 S.C. 142,
 155-57, 561 S.E.2d 640, 647 (Ct. App. 2002).   If Douglas was prejudiced, any
 such prejudice was cured by the trial judges curative instruction.  The
 instruction was straightforward and refrained from reiterating or emphasizing
 Officer McLeods statement.  State v. Edwards, 373 S.C. 230, 237,
 644 S.E.2d 66, 69 (Ct. App. 2007).  
Furthermore, appellate courts will not generally set aside
 convictions due to insubstantial errors which dont affect the result. State
 v. Douglas, 369 S.C. 424, 432, 632 S.E.2d 845, 849 (2006).  In determining
 if an error is harmless, the appellate court will review the entire record to
 determine what effect the error had on the verdict. Id.  An
 insubstantial error not affecting the result of the trial is harmless where guilt
 has been conclusively proven by competent evidence such that no other rational
 conclusion can be reached. State v. White, 372 S.C. 364, 386, 642
 S.E.2d 607, 618 (Ct. App. 2007). In the instant case, the State presented testimony from a
 confidential informant who was well acquainted with Douglas, a phone record
 showing Douglas received a call from the location of the drug exchange minutes
 before the transaction occurred, evidence the substance exchanged was crack
 cocaine, and an audio recording of the drug transaction.    
In addition, Officer McLeods testimony could not have affected
 the outcome of the trial because Candrilli previously testified that Douglas sold crack before the event in question.  Improperly
 admitted evidence is harmless where cumulative. State v. Williams, 321 S.C. 455, 463, 469 S.E.2d 49, 54 (1996).  The trial judge interjected a curative instruction ex
 mero motu that the court was permitting the testimony of how Candrilli knew
 Douglas only as an identification issue and for no other purpose. Douglas did not object.  Accordingly,
 we can discern no abuse of discretion in the trial judges denial of Douglass motion for mistrial.
II. Evidence in the Solicitors Closing Argument
In his closing argument the solicitor demonstrated that the slip
 of paper Candrilli used on the witness stand in recalling phone numbers was
 torn from his legal pad. The solicitor admitted he wrote some of the phone
 numbers for Candrilli and explained that the slip of paper was only to refresh
 Candrillis recollection of phone numbers associated with an incident that
 occurred sixteen months prior to trial. Douglas argues the trial court erred in
 failing to grant a mistrial based on the solicitors comments on matters not
 introduced into evidence at trial.  We disagree.
Initially, we note this issue is not preserved for our review.  Douglass counsel did not make a timely objection to the solicitors closing but instead
 delayed until after the jury had been charged before raising any objections. 
 It is a fundamental principal that a contemporaneous objection is required at
 trial to properly preserve an error for appellate review[2]. State v. Black, 319 S.C.
 515, 521, 462 S.E.2d 311, 315 (Ct. App. 1995).  The proper course of action
 when counsel makes an improper statement is for opposing counsel to immediately object, have a record made of the statement, and ask the court for a distinct
 ruling thereon.  Id. at 521, 462 S.E.2d at 315.  Failure to object when
 evidence is offered amounts to a waiver of the right to object. Id. at 521-22, 462 S.E.2d at 315.  
Even
 if this argument were preserved for appellate review, the solicitors
 presentation of the legal pad from which the slip of paper was torn and his
 comments regarding who wrote the telephone numbers on the paper afford no basis
 for a mistrial. 
A solicitor may not rely on statements not in evidence during
 closing argument.  State v. Gaines, 271 S.C 65, 66, 244 S.E.2d 539, 540
 (1978).  Arguments must be confined to evidence in the record and reasonable
 inferences therefrom, although failure to do so will not automatically result
 in reversal.  State v. Copeland, 321 S.C. 318, 468 S.E.2d 620 (1996).  A
 new trial will not be granted unless the solicitor's comments so infected the
 trial with unfairness as to make the resulting conviction a denial of due
 process. State v. Coleman, 301 S.C 57, 61, 389 S.E.2d 659, 661 (1990)
 (citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).
Here, the solicitor
 improperly introduced new evidence to the jury in his closing argument by
 explaining he wrote some of the phone numbers on the slip and by demonstrating
 the origin of the slip of paper.  However, the solicitors comments do not
 automatically mandate reversal if they do not result in prejudice to the
 defendant. Gill v. State, 346 S.C. 209, 221, 552 S.E.2d 26, 33 (2001).  
No definite rule
 of law governs finding an error harmless; rather, the
 materiality and prejudicial character of the error must be determined from its
 relationship to the entire case.  State v. Gillian, 360 S.C. 433,
 454-55, 602 S.E.2d 62, 73 (Ct. App. 2004).  In determining whether an error is
 harmless, the appellate court must review the entire record to determine what
 effect the error had on the verdict. State v. Douglas, 369 S.C. 424,
 432, 632 S.E.2d 845, 849 (2006).  Error is harmless where it could not
 reasonably have affected the result of the trial. In re Harvey, 355 S.C.
 53, 63, 584 S.E.2d 893, 897 (2003).  Generally, appellate courts will not set
 aside convictions due to insubstantial errors not affecting the result. Douglas, 369 S.C. at 432, 632 S.E.2d at 849.
Based on the totality of the record we find the solicitor's
 comment, although an improper explanation of the slip of paper Candrilli used
 on the witness stand, was harmless error.  First, the solicitors
 explanation of the source of the slip of paper did not go to the heart of the
 crime for which Douglas was charged.  Whether the solicitor or Candrilli wrote on the slip
 of paper has little if any probative value as to the material elements of distribution
 of crack cocaine.  See State v. Black, 319
 S.C. 515, 522, 462 S.E.2d 311, 316 (Ct. App. 1995) (noting whether a trooper
 was or was not driving an unmarked car has little if any probative value as to
 the defendants crime of speeding).  Second, the solicitors explanation
 uncovered conflicting testimony by the States own witness. The weight of the
 evidence and the credibility of the witnesses are matters within the province
 of the jury. Fortner v. Carnes, 258 S.C. 455, 461, 189 S.E.2d 24, 27
 (1972).  Douglas was not prejudiced by the solicitors closing argument which
 potentially cast speculation upon the truth of Candrillis statements from the
 witness stand.  Finally,
 we find the evidence of Douglass guilt overwhelming based on (1) testimony by
 Candrilli regarding the drug transaction; (2) the audio recording documenting
 the transaction; and (3) the phone records showing a call was placed from the
 pay phone at Crossroads Grocery to Douglass cell phone a short time before the
 transaction occurred.
III. Comments on Drugs in Society During Solicitors
 Closing Argument 
At the end of his closing argument, the solicitor acknowledged the
 jurys decision involved taking Douglass liberty but that the jurys decision
 also affected the liberty of every youththe liberty of every young person,
 every person that goes to Marlboro County High School, every person from this
 entire county. The solicitor also commented on the omnipresent nature of drugs
 when he said, [i]t is not just stopping here in Marlboro County.  It goes to Chesterfield.  It goes to Dillon.  It goes to Darlington.  It goes to North Carolina.  It
 goes to everywhere because drugs are a universal problem, and drugs are
 everywhere.  
The solicitor concluded by stating, if you today find that the
 evidence is significant enough to find him guilty, I believe that you will be
 doing this community and this society a wonderful, wonderful favor by taking a
 drug dealer off of the streets and placing him where he belongs where he cant
 do harm to anyone else [t]heres going to be problems butthe less drug
 dealers there are on the streets, the better off we are. Douglas argues the
 trial court erred in failing to grant his motion for mistrial based on the
 solicitors closing argument.  We disagree.
Again we note this issue is not preserved for our review.  Douglass counsel did not make a timely objection to the solicitors closing but instead delayed
 until after the jury had been charged before raising any objections[3].  Even
 if this argument were preserved for appellate review, the solicitors
 discussion of drugs in schools and surrounding counties affords no basis for a
 mistrial. 
The appropriateness of a solicitor's closing argument is a matter
 left to the trial court's discretion. State v. King, 349 S.C. 142, 160,
 561 S.E.2d 640, 649 (Ct. App. 2002). An appellate court will not disturb the
 trial court's ruling regarding closing argument unless there is an abuse of
 that discretion. Id.  An
 appellant must prove an abuse of discretion and resulting prejudice to warrant
 reversal.  State v. Navy, 370 S.C. 398, 412, 635 S.E.2d 549, 556 (Ct.
 App. 2006).  
A
 solicitors argument must be carefully tailored so as not to appeal to the
 personal bias of a juror or be calculated to arouse a jurors passion or
 prejudice.  King, 349 S.C. at 159, 561 S.E.2d
 at 649.  When reviewing a solicitors closing argument, the court must
 determine if the solicitors comments so infected the trial with unfairness as
 to make the resulting conviction a denial of due process.  Navy, 370
 S.C. at 412, 635 S.E.2d at 556.  On appeal, an
 appellate court will review the alleged impropriety of the solicitor's argument
 in the context of the entire record, including the adequacy of the trial
 judges curative instructions and the evidence of the defendants guilt. State
 v. Rudd, 355 S.C. 543, 550, 586 S.E.2d 153, 157 (Ct. App. 2003).  In State
 v. Durden, solicitors closing arguments are discussed as follows:

 So long as he stays within the record and its reasonable
 inferences, the prosecuting attorney may legitimately appeal to the jury to do
 their full duty in enforcing the law, and may employ any legitimate means of
 impressing on them their true responsibility in this respect,[he] may
 illustrate the effect of their verdict on the community or society generally
 with respect to obedience to, and enforcement of, the law 
 State v. Durden, 264 S.C. 86, 92, 212 S.E.2d 587, 590 (1975) (citing 23A C.J.S.
 Criminal Law § 1107 (2007)).  

In
 the instant case the solicitor reviewed the testimony presented to the jury and
 emphasized the important nature of the jurys decision in regard to the
 community.  The solicitor did not implore the jury to
 speak for any victim or beseech them to abandon their impartiality, but instead
 stressed that the jury must weigh the evidence to determine if it is significant enough to find [Douglas] guilty. See State
 v. Reese, 370 S.C. 31, 37-38, 633 S.E.2d 898, 901-02 (2006) (holding that a
 solicitors Golden Rule closing argument asking jurors to abandon their
 impartiality and view the evidence from victim's viewpoint deprived defendant
 of a fair trial).
We
 hold Douglas was not prejudiced by the solicitors general discussion of drugs
 pervading presence in Marlboro County, its schools, or its surrounding
 counties.  After reviewing the entire record we find there was sufficient
 evidence to support the jurys decision.  In this context, the comments on the
 universal nature of drugs during the solicitors closing argument were not so
 prejudicial as to deny Douglas a fair trial.
AFFIRMED.
ANDERSON and
 THOMAS, JJ., and GOOLSBY, A.J., concur.

[1] We decide this case without oral argument
 pursuant to Rule 215, SCACR.
[2] In Toyota of Florence v.
 Lynch, 314 S.C. 257, 442 S.E.2d 611 (1994), South Carolina recognized a
 narrow exception to this rule, but for the Toyota exception to
 apply it must be a case in which a vicious inflammatory argument results in
 clear prejudice.  Dial v. Niggel Associates, Inc., 333 S.C. 253, 509
 S.E.2d 269 (1998).  That is not the case in this instance.  See Toyota of
 Florence v. Lynch (holding that although counsel did not contemporaneously
 object to posters depicting Oriental characters and mushroom cloud explosions,
 in flagrant cases where a vicious inflammatory argument results in clear
 prejudice, a new trial motion should be granted despite the lack of timely
 objection).   
[3] It is a fundamental
 principal that a contemporaneous objection is required at trial to properly
 preserve an error for appellate review. State v. Black, 319 S.C. 515,
 521, 462 S.E.2d 311, 315 (Ct. App. 1995).