PREHEARING REPORT

THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Barrett Harris, Appellant.
 
 
 

Appeal From Spartanburg County
 Paul M. Burch, Circuit Court Judge
Unpublished Opinion No. 2007-UP-551
Submitted November 1, 2007  Filed
 December 14, 2007
AFFIRMED

 
 
 
 Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,
 and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia,
 and Harold W. Gowdy, III, of Spartanburg; for Respondent.
 
 
 

PER CURIAM:  Barrett
 Harris (Harris) appeals his conviction for possession of crack cocaine with
 intent to distribute alleging the trial court committed reversible error by
 admitting a National Crime Information Center (NCIC) report into evidence.  We
 affirm.[1]
FACTS
On May 23, 2003, Officer Mixon Eldridge
 (Eldridge) drove his patrol vehicle to an apartment complex to investigate
 reports about illegal drug activity in the area.  Eldridge noticed an
 automobile parked in an area that was not a normal parking space.  He ran the
 license plate on the vehicle and it came back registered to Harris.  He also
 discovered that Harris had three active Greenville County warrants for failure
 to pay child support. 
Eldridge
 then confronted Harris as he walked across the parking lot from the car. 
 Eldridge confirmed Harris identity and placed him under arrest pursuant to the
 outstanding family court warrants.
During
 this time another individual, Chris Bruton (Bruton), drove up and parked next
 to Eldridges vehicle.  Harris then asked if he could give Bruton some of his
 items.  Eldridge agreed to the transfer based upon his experience that it was
 not an unusual request when an arrest is made.  Eldridge then testified that
 Harris unzipped his pants, reached into his underwear, and handed Bruton a
 black object.  Eldridge further testified that he immediately grabbed Brutons
 hand and removed the object for his safety.    
The object
 was a film canister wrapped in black tape that contained twenty-eight rocks of
 crack cocaine weighing approximately four grams.  He also subsequently seized a
 police scanner and $329.67 in small denominations incident to arrest.    
 
STANDARD OF REVIEW
In
 criminal cases, the appellate court sits to review errors of law only. State
 v. Wilson, 345 S.C. 1, 5-6, 545 S.E.2d 827, 829 (2001); State v.
 Wood, 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct. App. 2004). The
 admission or exclusion of evidence is left to the sound
 discretion of the trial judge. State v. Gaster, 349 S.C. 545,
 557, 564 S.E.2d 87, 93 (2002). A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of
 discretion or the commission of legal error, which results in prejudice to the
 defendant. State v. Edwards, 373 S.C. 230, 234, 644 S.E.2d 66, 68 (Ct.
 App. 2007).  
DISCUSSION
Harris alleges
 the trial court erred by allowing a paralegal from the solicitors office to
 authenticate a NCIC document purporting to show that the automobile Harris
 was driving, at the time of his arrest, was registered in his name consistent
 with officer Eldridges testimony.
Harris objected
 to the document on the ground that it was not properly authenticated because Regina
 Wray (Wray) is not competent to attest to or authenticate this document.  Rule
 901(a), SCRE, requires that exhibits must be authenticated or identified as a
 condition precedent to admissibility.  This requirement is satisfied by evidence
 sufficient to support a finding that the matter in question is what its
 proponent claims it to be.  Rule 901(b) (1), SCRE, also illustrates that
 testimony from a witness with knowledge can meet this threshold requirement. 
 Upon review of the record, we find that the document was properly
 authenticated.  Wray testified that she was NCIC certified and that states
 exhibit number 6 is the NCIC printout she pulled on her computer just 15
 minutes prior to her testimony.  Accordingly, there was sufficient evidence to
 identify the document as being what the state purported it to be.
Aside
 from the issue of authentication, while not absolutely clear from the
 objection, an issue remains as to the hearsay nature of the information in an
 NCIC report.[2] 
 More specifically, this court has not addressed whether the exception to
 hearsay, Rule 803(6), SCRE, is inapplicable because the authenticating witness
 does not satisfy the custodian or other qualified witness requirement.  While there is no South Carolina jurisprudence specifically
 addressing the admissibility of NCIC reports, jurisdictions across the country
 have approached the topic with some degree of uniformity.  It is widely held
 that NCIC reports are hearsay.

 Courts in other jurisdictions have likewise concluded that, whether
 or not NCIC information fits within any exception to the hearsay rule, such
 information is hearsay. See, e.g., United States v. Davis, 568 F.2d 514 (6th Cir.1978); 
 United States v. Johnson, 413 F.2d
 1396 (11th Cir. 1969) (noting that NCIC information was double hearsay in that
 witness testified as to what he learned from NCIC and NCIC in turn gathered
 information from other police departments); State v. Broussard, 819 So.2d 1141 (La. Ct. App. 2002); 
 Sanders v. State, 786 So.2d
 1078 (Miss. Ct. App. 2001); Dillingham v. Commonwealth, 995
 S.W.2d 377 (Ky. 1999), cert. denied 528 U.S. 1166, 120 S.Ct. 1186, 145 L.Ed.2d
 1092 (2000); State v. Underwood, 286 N.J.Super. 129, 668 A.2d 447
 (1995); Commonwealth v. Travaglia, 541 Pa. 108, 661 A.2d 352
 (1995) (approving trial court's refusal to admit NCIC printout where proponent
 failed to establish proper basis for admitting such under the business records
 exception), cert. denied 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996);
 Frye
 v. Commonwealth, 231 Va. 370, 345 S.E.2d 267 (1986) (NCIC printout
 admissible hearsay when it fit within business records exception to the hearsay
 rule); State v. Buck, 670 S.W.2d 600 (Tenn. 1984) (stating that
 information in NCIC reports is pure hearsay of a dubious degree of accuracy,
 prepared for purposes other than court use, contains information that is likely
 to be prejudicial under all circumstances, and is not the best evidence of
 matters that can be proven by reliable, documentary evidence).

 Vlietstra v. State, 800 N.E.2d 972, 975 (Ind. Ct. App. 2003).  
We agree with those
 jurisdictions that find that upon laying of a proper foundation, NCIC records
 may be admitted under the business records exception to the hearsay rule.  Therefore,
 we must discern whether Wray is a qualified witness under Rule 803(6), SCRE,
 so as to satisfy the hearsay exception.
South
 Carolina adopted §19-5-510 of the South Carolina Code, the Uniform Business
 Record as Evidence Act, prior to the promulgation of the South Carolina Rules
 of Evidence. The statute provides:

 A record of an act, condition or event
 shall, insofar as relevant, be competent evidence if the custodian or other
 qualified witness testifies to its identity and the mode of its preparation,
 and if it was made in the regular course of business, at or near the time of
 the act, condition or event and if, in the opinion of the court, the sources of
 information, method and time of preparation were such as to justify its
 admission.

 S.C. Code Ann. § 19-5-510 (1976).
This
 section gives the trial court control to exclude or require additional proof if
 the authenticity or trustworthiness of the business record is suspect.  State
 v. Rice, 375 S.C. 302, 652 S.E.2d 409, 423 (Ct. App. 2007) (citing Kershaw County Dep't of Soc. Servs. v.
 McCaskill, 276 S.C. 360, 362, 278 S.E.2d 771, 773 (1981).  Rule
 803(6), SCRE, states that:

 A memorandum, report,
 record, or data compilation, in any form, of acts, events, conditions, or
 diagnoses, made at or near the time by, or from information transmitted by, a
 person with knowledge, if kept in the course of a regularly conducted business
 activity, and if it was the regular practice of that business activity to make
 the memorandum, report, record, or data compilation, all as shown by the
 testimony of the custodian or other qualified witness, unless the source of information or the method
 or circumstances of preparation indicate lack of trustworthiness; provided,
 however, that subjective opinions and judgments found in business records are
 not admissible. The term business as used in this subsection includes
 business, institution, association, profession, occupation, and calling of
 every kind, whether or not conducted for profit.

A business record without a foundation
 about the manner in which it is prepared or the source of its information does
 not meet the requirements in either §19-5-510 or Rule
 803(6), SCRE. See State v. Sarvis, 317 S.C. 102, 107, 450
 S.E.2d 606, 609 (Ct. App. 1994); see also Connelly v.
 Wometco Enterprises, Inc., 314 S.C. 188, 191, 442 S.E.2d 204, 206
 (Ct. App. 1994) (holding employment file, although relevant and otherwise
 admissible, was properly excluded from evidence where the employer failed to
 offer the file through its custodian or another qualifiedwitness); State
 v. McFarlane, 279 S.C. 327, 330, 306 S.E.2d 611, 613 (1983) (finding trial
 court properly refused to admit medical report when no one could testify to the
 identity, mode of preparation, or whether report was made in the regular course
 of business at or near the time of the accident).
Moreover, Rule 803(6) does not require the testifying witness to
 have personally participated in the creation of the document or to know who
 actually recorded the information. Midfirst Bank, SSB v. C.W. Haynes & Co., Inc., 893 F.Supp. 1304, 1311 (D.S.C. 1994) (citing United States v. Keplinger, 776 F.2d 678,
 693 (7th Cir. 1985)). Obviously, such a requirement would eviscerate the
 business records exception, since no document could be admitted unless the
 preparer (and possibly others involved in the information-gathering process)
 personally testified as to its creation. Keplinger, 776 F.2d at
 694. Rather, the business records exception requires the witness to be familiar
 with the recordkeeping system. Id. see also United
 States v. Hathaway, 798 F.2d 902, 906 (6th Cir.1986). The phrase
 other qualified witness should be
 broadly interpreted. 4 Jack B. Weinstein & Margaret A. Berger, Weinsteins Evidence § 803(6)[2],
 196 -198 (1994).
Upon full
 consideration of the record on appeal, we find that Wray was not a qualified
 witness despite that terms broad interpretation.  The record is devoid of any
 evidence as to what exactly NCIC certified signifies, and the only evidence
 of Wrays knowledge about the NCIC recordkeeping process was her ability to run
 reports from her computer and her understanding that the information on the
 NCIC report comes from the Department of Motor Vehicles.  At least based on
 this record she quite simply seemed to lack the required familiarity with the
 recordkeeping system to establish a proper foundation for the admission of the
 business record. 
However, even
 assuming the issue was properly preserved for appeal, the admission of the NCIC
 report was clearly cumulative and harmless.  Wray fully testified as to the contents of the
 printout before the motion was made to have it entered into evidence. 
 Specifically, she testified that it was a tag check, which she ran on license
 plate number 390-RFL that came back to a 1983 BMW. . . . And it was registered
 to a Barrett Bernard Harris.  Officer Eldridge also testified without
 objection that he ran a check of the plates on the BMW and the plates were
 registered to Harris, supplying the probable cause necessary for the original
 arrest.
Both
 Officer Eldridge and Wray testified as to the same information that was
 contained in the NCIC printout.  Moreover, there was never any contemporaneous objection
 made to Wrays testimony.[3] 
 [I]t is well settled that a contemporaneous objection must be made to preserve
 an argument for appellate review.  Washington v. Whitaker, 317
 S.C. 108, 114, 451 S.E.2d 894, 898 (1994).  
Accordingly,
 even if we were to determine that the trial court erred in allowing the
 printout to be admitted into evidence, such error would be harmless.  Under settled
 principles, the admission of improper evidence is harmless where it is merely
 cumulative to other evidence.  State v. Blackburn, 271 S.C. 324, 329, 247
 S.E.2d 334, 337 (1978) (citing Long et al. v. Conroy et al., 246 S.C.
 225, 143 S.E.2d 459 (1965); Marsh Plywood Corp. v. S. C. State Highway Dept.
 et al., 258 S.C. 119, 187 S.E.2d 515 (1972)).  The testimony of both
 officer Eldridge and Wray indicates that the vehicle was registered to Harris. 
 The  NCIC printout is merely cumulative.  The only evidence contrary to this
 position was offered by Harris mother Joanne Harris.  Ms. Harris testified
 that the vehicle was registered in her name, but that he did most of the
 driving.[4]   
Moreover,
 the issue to which the evidence was relevant was collateral in that it did not
 relate to one of the elements of the charge.  The document itself contained no
 new information that was not already admitted through witness testimony.  Any
 error in the admission of evidence which is cumulative to other evidence that was
 proffered without objection is harmless.  State v. Schumpert, 312 S.C.
 502, 507, 435 S.E.2d 859, 862 (1993).  Error that is insubstantial and unlikely
 to affect the result of the trial is rarely sufficient to warrant reversal.  State
 v. Sherard, 303 S.C. 172, 176, 399 S.E.2d 595, 597 (1991).
CONCLUSION
After full consideration of the record on appeal, we
 find that any error by the trial court was harmless.  Accordingly, Harris
 conviction and sentence for possession of crack cocaine with intent to distribute
 is hereby 
AFFIRMED.
HUFF and PIEPER, JJ., and GOOLSBY, A.J., concur

[1] We decide this case without oral argument
 pursuant to Rule 215, SCACR.
[2] While it is questionable whether Harris properly
 preserved the issue as it relates to the business records exception to hearsay,
 we nevertheless address the issue since we ultimately conclude that any error
 was harmless.  Generally, an objection must be sufficiently specific to bring
 into focus the precise nature of the alleged error so that it can be reasonably
 understood by the trial judge.  State v. Holliday, 333 S.C. 332, 338, 509
 S.E.2d 280, 283 (Ct. App. 1998) (quoting McKissick v. J.F. Cleckley &
 Co., 325 S.C. 327, 344, 479 S.E.2d 67, 75 (Ct. App. 1996)).
[3] While the record indicates a bench conference
 took place before the witness testified, the conference was not proffered for
 the record.  However, a complete reading of the record suggests that after the
 witness testified and the court was asked to admit the document, counsel
 indicated that it was subject to his earlier objection (which we assume
 occurred during the bench conference).  He offered an additional basis
 for the objection only after Wray testified; he asserted she was not qualified
 to attest to or authenticate the document.  Thus, the objection addressed only
 the document itself rather than the testimony.  That foundational objection
 should have been presented to the court prior to her testimony and was
 therefore untimely.
[4] At the conclusion of Wrays testimony and
 following the admission of the NCIC report, the judge asked Ms. Harris why he
 should not hold her in contempt and send her to jail for lying about the name under
 which the car was registered.  Ms. Harris claimed that she did not deliberately
 mislead the court and that there was some confusion over whether her name was
 just on the insurance or was also on the car.  At sentencing, Mr. Harris told
 the judge she didnt own the car; it was the insurance.  The insurance was in
 her name, not the car.  Her statement at trial was the only reason the NCIC
 report was offered into evidence and Mr. Harris claimed that she was just
 confused.  However, because Mr. Harris statement was made during the
 sentencing phase of his trial, it was not considered in addressing the merits
 of the issue before the court.