# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Harold Gene White, III, Appellant.

Appellate Case No. 2022-000579

_____

Appeal From York County
Brian M. Gibbons, Circuit Court Judge

_____

Opinion No. 6113
Submitted May 1, 2025 – Filed July 2, 2025

_____

**AFFIRMED**

_____

Appellate Defender Joanna Katherine Delany, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General Deborah R.J. Shupe,
both of Columbia, and Solicitor Kevin Scott Brackett, of
York, for Respondent.

_____

**GEATHERS, J.:** Appellant Harold Gene White, III challenges his convictions for
possession with intent to distribute hydrocodone, possession of oxycodone,
possession of cocaine, and possession with intent to distribute marijuana. White
argues the circuit court erred by declining to suppress evidence seized during
searches of his home and his cell phone because the information in the search
warrant affidavits was insufficient to show probable cause. White also argues the

text messages extracted from his cell phone should have been excluded from evidence because they contained inadmissible hearsay and constituted propensity evidence prohibited by Rule 404(b), SCRE.  We affirm.

## FACTS/PROCEDURAL HISTORY

This case was precipitated by the death of White's infant daughter.  During the investigation of her death, law enforcement obtained a warrant to search the only two places where she had been on the day of her death, White's home and the home of White's mother.  During the search of White's home, law enforcement discovered and seized evidence of the crimes with which he was charged in this case, i.e., possession with intent to distribute oxycodone, possession with intent to distribute marijuana, possession of cocaine, and possession with intent to distribute hydrocodone.

Specifically, on March 29, 2017, the Rock Hill Police Department and Piedmont Medical Center EMS personnel responded to a 911 call from the home of White's mother, Yolanda Adams, concerning White's nine-month-old daughter (Infant), who was unconscious and not breathing.  First responders took Infant to Piedmont Medical Center, where she was pronounced dead.  Special Agent Trista Baird, with the South Carolina Law Enforcement Division (SLED), learned of Infant's death and began an investigation the same day.  She interviewed White and Adams and received the results of Infant's autopsy approximately seventeen days later, circa April 15, 2017.  The results revealed that Infant had fentanyl and norfentanyl in her blood at the time of her death.

On April 17, 2017, Special Agent Baird submitted to the local magistrate affidavits to support her request for a warrant to search Adams's and White's respective residences for

> [a]ny and all evidence related to the death of [Infant]: to include Fentanyl (a DEA Schedule II synthetic morphine substitute anesthetic/analgesic), any substances suspected to be Fentanyl, and any paraphernalia or items associated with the use of Fentanyl; state issued identification card and/or driver's license of any and all individuals at the residence; any and all cellphones belonging to: [White, Adams, and other individuals present in Adams's home].

In her affidavit, Special Agent Baird gave the following reasons for her belief that the property sought was on the subject premises:

On March 29, 2017, at approximately 5:56 pm, Piedmont Medical Center EMS and Rock Hill Police Department (RHPD) were dispatched to ▆▆ Simpson Street in the city limits of Rock Hill, South Carolina, in reference to a 9-month-old female ([Infant] dob ▆▆ 2016; dod 3/29/2017) unconscious and not breathing. EMS arrived on scene and found [Infant] supine on the living room floor with a female performing chest compressions. She was unresponsive, not breathing, had no pulse, and had vomit coming from her mouth. She was transported to Piedmont Medical Center[,] where she was pronounced deceased. York County Coroner's Office, RHPD, and SLED responded to the hospital.

According to [Infant]'s father (Harold Gene White III), his mother (Yolanda Harris Adams) picked up his twins ([Infant] and [Infant 2]) from his residence (▆▆ Amanda Lane, Rock Hill, South Carolina) at approximately 11:00 am or 12:00 pm on March 29, 2017. Adams took the twins to her residence at ▆▆ Simpson Street. Later in the afternoon, [White] went to Adams'[s] house and found [Infant] asleep in Adams'[s] bed. [Infant 2] was playing with Adam[s]'s friend (Williette Woodard Beard) in the living room. Adams was not home. [White] then left the residence.

According to Adams, her neighbor (Jasmine Latasha Rawlinson) picked the twins up from [White] and brought them to [Adams's] house around lunchtime. Adams fed the twins each a bottle with formula mixed with infant cereal. Then, the three of them lay down on her bed and went to sleep. Adams and [Infant 2] both woke up, got out of bed, and left [Infant] sleeping in the bed. Adams got her children ready for their doctor's appointment and asked Amanda Jo Pettrey (who resides at her residence) and Beard to watch [Infant] and [Infant 2] while she took her children to the doctor. When she [got] home, Adams was

told that [Infant] was still asleep and went to check on her. She found her unresponsive and not breathing. Adams brought [Infant] to Julisa White, who had arrived on scene at some point prior to Adams'[s] arrival. Amanda Pettrey began CPR in the living room. Rawlinson, who was also on scene, called 911. Darrell Rodney Ross, who resides at the residence, was asleep in one of the bedrooms for most of the day.

An autopsy was completed on March 30, 2017. The toxicology report from NMS Labs revealed that [Infant] had 17 ng/mL of Fentanyl and 5.2 ng/mL of Norfentanyl in her blood at the time of her death.

It is the belief of this affiant that information gained from this search is necessary to assist investigators in determining the cause and manner of death of [Infant], the individuals who were present at the time and leading up to her death, and the timeline of events surrounding her death.

Without taking any additional testimony, the magistrate issued warrants to search the residences, and Special Agents Jason Wells and M. Skipper Wallace executed the warrants on that same day.[1] Special Agents Wells and Wallace seized from White's residence ten cell phones, multiple bags of suspected marijuana, a scale, several firearms, multiple pills of various shapes and colors, a small brown envelope containing white powder, and a hand-tied plastic bag containing white powder.

On April 25, 2017, SLED issued a laboratory report analyzing the substances found in White's home and identified them as hydrocodone and acetaminophen in one sample, alprazolam in another sample, prescription ibuprofen, oxycodone, cyclobenzaprine, cocaine, and marijuana. On that same day, Special Agent Baird submitted to the magistrate another affidavit to support her request for a warrant to search the cell phones seized from White's residence, seeking: "Any and all data, to include but not limited to records, images, call logs, phone numbers, text messages, videos, voice messages, internet history, GPS location information, wireless

---

[1] Neither the search warrant for Adams's home nor the corresponding return appear in the record.

networks, passwords, user accounts, and emails. All information pertaining to the investigation regarding the death of [Infant.]"

In her affidavit, Special Agent Baird's stated reasons for her belief that the data sought was on the subject cell phones were virtually identical to those reasons stated in her April 17 affidavit, with the addition of the following language: "These cellphones were obtained from a search warrant that was executed on April 18,[2] 2017 at ███ Amanda Lane[,] Rock Hill, South Carolina. Extractions of these cellphones are needed at this time." The magistrate issued the warrant, and Special Agent Baird and Detective Brooks Felmet, of the Rock Hill Police Department, extracted data from four of the phones.[3] The data extracted from White's phone consisted of text messages exchanged between White and other individuals in late February, March, and April 2017 that included illegal-drug-trade parlance, e.g., "smoke" (marijuana); "pine" (marijuana); "blues" (oxycodone or "clandestinely manufacture[d] Fentanyl pills"); "perkies" (prescription Percocet, a combination of oxycodone and acetaminophen); "yaps" (MDMA, a/k/a/ ecstasy, or hydrocodone); "white" (hydrocodone or oxycodone); and "little snow" (cocaine).[4]

A grand jury indicted White for possession with intent to distribute oxycodone, possession with intent to distribute marijuana, possession of cocaine, and possession with intent to distribute hydrocodone. The circuit court conducted a bench trial in April 2022 and found White guilty of possession with intent to distribute marijuana, possession of cocaine, possession of oxycodone, and possession with intent to distribute hydrocodone.[5] The court sentenced White to two years for the marijuana conviction, three years for the cocaine conviction (second offense), two years for the oxycodone conviction (second offense), and seven years for the hydrocodone conviction (second offense), to run concurrently. This appeal followed.

### ISSUES ON APPEAL

---

[2] This appears to be a typographical error as the return to the search warrant is dated April 17, 2017.

[3] They were unable to extract any data from the remainder.

[4] The earliest text was dated February 19, 2017, and the latest text was dated April 12, 2017.

[5] A bench trial was initially conducted in 2019 but ended in a mistrial as defense counsel admitted he was reading a novel during the first day of trial.

1.      Did the circuit court err by denying White's motion to suppress the evidence seized from his home and cell phone when the information in the search warrant affidavits was insufficient to establish probable cause?

2.      Did the text messages extracted from White's cell phone constitute inadmissible propensity evidence?

3.      Did the admission of the text messages into evidence violate Rule 403, SCRE?

4.      Did the text messages contain inadmissible hearsay?

## STANDARD OF REVIEW

### Motion to Suppress

In evaluating the circuit court's ruling on a motion to suppress, this court reviews the factual findings for any evidentiary support, "but the ultimate legal conclusion . . . is a question of law subject to de novo review." *State v. Frasier*, 437 S.C. 625, 633–34, 879 S.E.2d 762, 766 (2022).

### Admission of Evidence

"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). Further, "[t]o warrant reversal based on the wrongful admission of evidence, the complaining party must prove resulting prejudice." *State v. Byers*, 392 S.C. 438, 444, 710 S.E.2d 55, 58 (2011).

Moreover, in the present case, this court's assessment of prejudice "must be viewed from the posture of a bench trial as opposed to a jury trial." *State v. Inman*, 395 S.C. 539, 565, 720 S.E.2d 31, 45 (2011). "It is well-established that it is a near insurmountable burden for a defendant to prove prejudice in the context of a bench trial as a judge is presumed to disregard prejudicial or inadmissible evidence." *Id.* *See also Cole v. Commonwealth*, 428 S.E.2d 303, 305 (Va. Ct. App. 1993) (reviewing an evidentiary ruling in a bench trial and stating, "'A judge, unlike a juror, is uniquely suited by training, experience[,] and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.' Consequently, we presume that a trial judge disregards prejudicial or inadmissible evidence. Finally, 'this presumption will control in the absence of clear evidence to

the contrary.'" (citations omitted) (first quoting *Eckhart v. Commonwealth*, 279 S.E.2d 155, 157 (Va. 1981), then quoting *Hall v. Commonwealth*, 421 S.E.2d 455, 462 (Va. Ct. App. 1992))); *id.* ("This is not to say that the admission of improper evidence in a bench trial may never result in reversible error. Where the record makes clear that the judge considered such inadmissible evidence in adjudicating the merits of the case, reversal would be appropriate.").

## LAW/ANALYSIS

### I. Motion to Suppress

White asserts the circuit court should have granted his motion to exclude from evidence the items seized from his home and cell phone because the information in the search warrant affidavits was insufficient to establish probable cause. *See State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002) ("Evidence seized in violation of the Fourth Amendment must be excluded from trial."). Specifically, White argues, "the affidavits did not state why police thought [White] exposed [Infant] to drugs or why they believed drugs would be found at [White's] home given the amount of time that had passed since [Infant's] death." We disagree.

The totality of the circumstances set forth in Special Agent Baird's April 17 affidavit established a fair probability that incriminating evidence related to the cause of Infant's death, including evidence of the unlawful possession of fentanyl, would be found in either White's or Adams's home despite the passage of nineteen days since Infant's death. Likewise, the totality of the circumstances set forth in Special Agent Baird's April 25 affidavit established a fair probability that incriminating evidence related to the cause of Infant's death would be found in data extracted from the cell phones seized in the April 17 search of White's home. Therefore, the April 17 and 25 warrants were supported by probable cause. *See State v. Kinloch*, 410 S.C. 612, 617, 767 S.E.2d 153, 155 (2014) ("A warrant is supported by probable cause if, given the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place."); *State v. Bennett*, 256 S.C. 234, 240, 182 S.E.2d 291, 294 (1971) ("To justify issuance of a search warrant[,] probable cause must be shown[,] but the term 'probable cause' does not import absolute certainty."); *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) ("[P]robable cause . . . does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required.").

### II. Admission of Text Messages

### A.    Propensity Evidence

White contends the text messages on his phone revealing drug transactions conducted in late February through April 2017 should have been excluded from evidence pursuant to Rule 404(b), SCRE, which prohibits the admission of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith."  White argues (1) he was not on trial for these drug transactions, and thus, they lacked logical relevance; (2) these transactions were too remote in time to April 17, 2017, the date of the offenses for which he was being tried, citing *State v. Ostrowski*, 435 S.C. 364, 867 S.E.2d 269 (Ct. App. 2021); and (3) the State did not prove the transactions by clear and convincing evidence.

Here, the circuit court ruled that the text messages *not* involving the types of drugs for which White was indicted were inadmissible.  As to the other texts, the State offered them to show White's intent to distribute the drugs, which was necessary to prove the charges of possession with intent to distribute hydrocodone and oxycodone, respectively,[6] unlike the circumstances in *Ostrowski*.  Additionally, the presiding judge stated that he would give these texts the credibility he believed they deserved whenever he weighed the evidence at the trial's conclusion.  As we explain below, these texts were admissible.

Prior drug transactions may be admitted into evidence to show intent.  Rule 404(b), SCRE (stating that evidence of other crimes, wrongs, or acts "may . . . be admissible to show . . . intent"); *State v. Wilson*, 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001) ("[E]vidence of a prior drug transaction is relevant on the issue of intent when the defendant has been charged with possession of a controlled substance with intent to distribute."); *State v. King*, 349 S.C. 142, 153, 561 S.E.2d 640, 645–46 (Ct. App. 2002) ("Testimony relating to a defendant's past drug distribution activities is admissible to establish the element of intent."); *id.* at 146, 155, 561 S.E.2d at 642, 646 (affirming the admission of testimony of the defendant's forty prior drug transactions dating back *one year*); *see also State v. Gore*, 299 S.C. 368, 370, 384 S.E.2d 750, 751 (1989) ("The evidence that appellant sold cocaine from [a] trailer on two occasions only *one month* earlier tends to establish his intent regarding the cocaine in his possession at the time in question." (emphasis added)).

---

[6] SLED agents seized enough marijuana from White's home to meet the statutory presumption of intent to distribute.  *See* S.C. Code Ann. § 44-53-370(d)(5) (Supp. 2024) (twenty-eight grams).

Further, when the amount seized by law enforcement is not enough to meet a statutory presumption of intent to distribute or there exists no such presumption for a particular drug, the probative value of prior drug transactions showing intent to distribute is high. *Compare Wilson*, 345 S.C. at 7–8, 545 S.E.2d at 830 (noting the State was required to rely on evidence of prior drug transactions and other circumstantial evidence to prove intent because the amount of crack seized was less than the amount that triggered the statutory presumption of intent and concluding, "[i]n light of the State's reliance on circumstantial evidence to prove intent, the evidence of a prior drug transaction only two days earlier at the same location was especially probative"), *with Ostrowski*, 435 S.C. at 394–96, 867 S.E.2d at 284–85 (concluding the evidence of the defendant's prior drug transactions was unnecessary because the amount of methamphetamine found in a pair of men's pants in the defendant's residence was enough to trigger the statutory presumption of trafficking and distinguishing the case from *Wilson* and *Gore*).

We acknowledge our statement in *Ostrowski* that text messages dating back three weeks before the date of the defendant's arrest were too remote in time to have logical relevance to the defendant's *identity* as the owner of the methamphetamine found by law enforcement. 435 S.C. at 394, 867 S.E.2d at 284. However, the court's analysis as to proof of *intent* measured the probative value of the evidence by its necessity to the State's case. *Id.* at 394–96, 867 S.E.2d at 284–85. The court did not purport to overrule *Wilson* or *Gore*, which are controlling on the issue of White's intent to distribute.

Further, we are not persuaded by White's argument that the State failed to meet its burden of showing clear and convincing evidence of the drug transactions referenced in the text messages. Specifically, White contends that the State did not show the transactions referenced in the text messages actually occurred. However, we do not view the completion of the transactions as necessary to show clear and convincing evidence of White's intent. The testimony of Officer Dana Gatti, who was qualified as an expert in "drug slang" assisted the circuit court in determining the meaning of certain language used in the texts.[7] Viewing the texts in light of this testimony, we conclude the State showed clear and convincing evidence of White's intent to distribute.

Moreover, any error in admitting the texts involving marijuana, oxycodone, or cocaine was harmless because law enforcement seized enough marijuana to

---

[7] White does not challenge the validity of this testimony or the qualification of Officer Gatti as an expert on appeal.

trigger the statutory presumption of intent to distribute, s*ee supra*, n. 6, and White was convicted of mere possession of oxycodone and cocaine, respectively.

## B.    Rule 403

White also contends that the admission of the text messages violated Rule 403, SCRE,[8] because its probative value was substantially outweighed by the danger of unfair prejudice. "Evidence of other crimes, even if logically relevant to prove intent, is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Wilson*, 345 S.C. at 7, 545 S.E.2d at 830. "The determination of prejudice must be based on the entire record and the result will generally turn on the facts of each case." *Id.* "Evidence is unfairly prejudicial if it has an undue tendency to *suggest a decision on an improper basis, such as an emotional one*." *Id.* (emphasis added). Here, the circuit court ruled that the challenged evidence was admissible under Rule 403. We agree.

The circuit court conducted a bench trial at White's request, and nothing in the record indicates the circuit court relied on inadmissible evidence in its determination of White's guilt. To the contrary, during the trial, the presiding judge stated that his decision on guilt would not be tainted by inadmissible evidence. He also stated that he would give the evidence the weight and credibility he believed it deserved. Therefore, the danger of unfair prejudice in White's bench trial was very low and could not substantially outweigh the high probative value of the texts involving hydrocodone and oxycodone or even the somewhat lower probative value of the texts involving the marijuana charge. *See Inman*, 395 S.C. at 565, 720 S.E.2d at 45 ("[I]t is a near insurmountable burden for a defendant to prove prejudice in the context of a bench trial as a judge is presumed to disregard prejudicial or inadmissible evidence."); *see also Cole*, 428 S.E.2d at 305 (reviewing an evidentiary ruling in a bench trial and stating, "'A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.' Consequently, we presume that a trial judge disregards prejudicial or inadmissible evidence. Finally, 'this presumption will control in the absence of clear evidence to the contrary.'" (citations omitted) (first quoting *Eckhart*, 279 S.E.2d at 157, then quoting *Hall*, 421 S.E.2d at

---

[8] Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

462)); *id.* ("This is not to say that the admission of improper evidence in a bench trial may never result in reversible error. Where the record makes clear that the judge considered such inadmissible evidence in adjudicating the merits of the case, reversal would be appropriate.").

Based on the foregoing, we conclude that the probative value of the evidence "was not substantially outweighed by the danger of suggesting a decision on an emotional or other improper basis."[9]

## C.    Hearsay

Finally, White maintains that the content of the texts constituted inadmissible hearsay because the statements were made out-of-court and offered for the truth of the matter asserted. *See* Rule 801(c), SCRE (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). We disagree.

As to the statements of third parties within the texts, the State did not offer them for the truth of the matter asserted but rather for the effect that the statements had on White, giving context to his responsive texts. *See* 29 Am. Jur. 2d *Evidence* § 660 (2025) ("[A]n out-of-court statement is not hearsay when offered to prove its effect *on a listener's mind* or to show why the listener subsequently acted as the listener did." (emphasis added)); *cf. Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 30–31, 609 S.E.2d 506, 511–12 (2005), *overruled on other grounds by State v. Wallace*, 440 S.C. 537, 892 S.E.2d 310 (2023) (holding that an expert's explanation for not taking a board certification test, i.e., "And the opinion of legal counsel was that there may be a conflict of interest if I will take the exam, which it was perceived that I kn[e]w[] all the answers," was not offered to prove the truth of the matter asserted); *State v. Griffin*, 277 S.C. 193, 198, 285 S.E.2d 631, 634 (1981), *overruled on other grounds by State v. Belcher*, 385 S.C. 597, 685 S.E.2d 802 (2009) (holding the circuit court erred in excluding as hearsay the defendant's testimony that "a friend had told him the deceased owned a firearm" because "[i]n attempting to prove self defense, [the defendant] offered the evidence to show he *believed* the deceased owned a firearm, not to prove the deceased in fact owned a gun"); *State v. White*, 425 S.C. 304, 310, 821 S.E.2d 523, 527 (Ct. App. 2018) ("We find the statement was not introduced to prove the truth of the matter asserted, i.e.[,] . . . [the victim] actually had a gun and knife on his moped. Instead, [the defendant] offered the statement to show *he believed* [the victim] had weapons on his moped."); *id.* at 310

---

[9] *Wilson*, 345 S.C. at 8, 545 S.E.2d at 830.

n.2, 821 S.E.2d at 527 n.2 (noting that other jurisdictions "have similarly held statements were not hearsay when they were offered to show the effect of the statement *on the listener's state of mind* when the listener's state of mind was relevant to the case" (emphasis added)).

White also argues that his own statements within the texts, which are admissions of a party-opponent that are not considered hearsay,[10] were inadmissible because the State failed to show White's phone was in his possession when the texts were received or sent from his phone. However, White has not cited any authority to support this conclusory argument and, therefore, he has abandoned it. *See State v. Jones*, 344 S.C. 48, 58–59, 543 S.E.2d 541, 546 (2001) (holding an issue is deemed abandoned on appeal if it is argued in a short, conclusory statement without supporting authority (citing *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 519 S.E.2d 583 (Ct. App. 1999))).

## CONCLUSION

Based on the foregoing, we affirm.[11]

**AFFIRMED.**

**WILLIAMS, C.J., and TURNER, J., concur.**

---

[10] *See* Rule 801(d)(2)(A), SCRE (excluding from the definition of hearsay a statement "offered against a party [that] is . . . the party's own statement in either an individual or a representative capacity").

[11] We decide this case without oral argument pursuant to Rule 215, SCACR.